[No. 4363-7-II. Division Two. August 20, 1982.]

SOUTHSIDE TABERNACLE, *Appellant,* v. PENTECOSTAL CHURCH OF GOD, PACIFIC NORTHWEST DISTRICT, INC., *Respondent.*

defender on a surface by the telephone used by arrested individuals.

*James A. Santucci,* for appellant.

*Daniel O. Kellogg,* for respondent.

PETRICH, J.—Southside Tabernacle, Inc., appeals summary judgment quieting title to certain church property in the Pentecostal Church of God, Pacific Northwest District, Inc. This appeal involves a determination of whether Southside Tabernacle, Inc., which was affiliated with but

withdrew from the Pentecostal Church of God of America, is entitled to property held by the Pentecostal Church of God, Pacific Northwest District, Inc., but purchased solely with Southside Tabernacle funds.

The Pentecostal Church of God, Northwest District, Inc. (District) is an affiliate of the Pentecostal Church of God of America, headquartered in Joplin, Missouri (General Church). The membership of Southside Tabernacle, Inc. (Southside) existed as an unincorporated association beginning in 1956, and in that same year it voluntarily affiliated with the Pentecostal Church of God of America. In December 1978, a majority of the Southside congregation voted to withdraw from the General Church, to incorporate, and to establish title in the corporation's name to the church property then held by the District. Southside accomplished the incorporation in 1979. Southside board members met with the District superintendent and other District officials to discuss the congregation's plan, which the District rejected. Southside then brought suit against the District to quiet title in the name of Southside Tabernacle, Inc.

The following facts are undisputed. In 1956 a building was purchased with Southside Tabernacle Association funds. Title was held by the District, but Southside made all payments and improvements. In 1974, this building was sold and a second one purchased. Again, legal title was held by the District. This second building was purchased for $95,000 and was financed in the following manner: the District assumed a $28,000 mortgage; a $25,000 loan was secured by a second mortgage on the new property listing the District as the mortgagor; the District assigned to the seller the real estate contract on the sale of the first building, and Southside put down $14,000. The balance was to be paid from Southside's building fund. It is undisputed that Southside made all payments on the whole obligation.

The trial court, on the District's motion for summary judgment, quieted title in the District relying on *Presbytery of Seattle, Inc. v. Rohrbaugh,* 79 Wn.2d 367, 485 P.2d

615 (1971), *cert. denied,* 405 U.S. 996, 31 L. Ed. 2d 465, 92 S. Ct. 1246 (1972). The court found that Southside was the successor in interest to the unincorporated association, and that Southside was closely associated with the District as a subsidiary organization in a hierarchical church relationship.

This being a summary judgment action the pivotal issue is whether there are disputed genuine issues of material fact, and if not, whether the District was entitled to judgment as a matter of law. *Lamon v. McDonnell Douglas Corp.,* 91 Wn.2d 345, 588 P.2d 1346 (1979). It is Southside's theory that the Pentecostal Church of God of America is a congregationally structured church, and though the District held legal title, the property was held in trust for Southside under a resulting or constructive trust. It is the District's theory that the Pentecostal Church of God of America is a hierarchically structured church and under the "formal title doctrine," the District owned the church property.

█ Before we examine the record to determine whether this appeal raises disputed material issues of fact, we must first decide on an analysis which does not violate the First Amendment prohibition against a state entangling itself in matters of church doctrine and practice. The Supreme Court in *Presbyterian Church in United States v. Mary Elizabeth Blue Hull Mem. Presbyterian Church,* 393 U.S. 440, 449, 21 L. Ed. 2d 658, 89 S. Ct. 601 (1969) warned against this tendency:

> the First Amendment severely circumscribes the role that civil courts may play in resolving church property disputes. It is obvious, however, that not every civil court decision as to property claimed by a religious organization jeopardizes values protected by the First Amendment. Civil courts do not inhibit free exercise of religion merely by opening their doors to disputes involving church property. . . . But First Amendment values are plainly jeopardized when church property litigation is made to turn on the resolution by civil courts of controversies over religious doctrine and practice. If civil courts undertake to resolve such controversies in order to adju-

dicate the property dispute, the hazards are ever present of inhibiting the free development of religious doctrine and of implicating secular interests in matters of purely ecclesiastical concern. . . . the Amendment therefore commands civil courts to decide church property disputes without resolving underlying controversies over religious doctrine.

The United States Supreme Court has recognized three methods for resolving church property disputes: (1) the approach taken in *Watson v. Jones,* 80 U.S. (13 Wall.) 679, 20 L. Ed. 666 (1872); (2) the so–called "neutral principles of law" approach; and (3) through legislation governing church property arrangements in a manner that precludes state interference in doctrines. *Maryland & Va. Eldership of Churches of God v. Church of God at Sharpsburg, Inc.,* 396 U.S. 367, 370, 24 L. Ed. 2d 582, 90 S. Ct. 499 (1970) (Brennan, J., concurring); *Jones v. Wolf,* 443 U.S. 595, 604, 61 L. Ed. 2d 775, 99 S. Ct. 3020 (1979). The *Watson* and neutral principles of law methods are relevant here.

We examine first the *Watson* approach. In *Watson v. Jones, supra,* the Court established the doctrine of total deference by civil courts to the decisionmaking body of the religious organizations. This requires the court to decide whether or not the local church is subject to some higher governing authority. The *Watson* Court identified two church structures: congregational and hierarchical. A hierarchical church is defined as a "general church organization in which there are superior ecclesiastical tribunals with a general and ultimate power of control more ·or less complete, in some supreme judicatory over the whole membership of that general organization." *Watson v. Jones,* 80 U.S. (13 Wall.) at 722–23. A congregational structure is described as "a religious congregation which, by the nature of its organization, is strictly independent of other ecclesiastical associations, and so far as church government is concerned, owes. no fealty or obligation to any higher authority." *Watson v. Jones,* 80 U.S. (13 Wall.) at 722. Most large protestant denominations and the Roman Cath-

olic Church have been found to be hierarchical. The Baptist churches are treated by the courts as being congregational. *See generally* Annot., 52 A.L.R.3d 324 (1973). Under the *Watson* approach, in a congregationally structured church, courts enforce the property decisions made "either by a majority of its members or by such other local organism as it may have instituted for the purpose of ecclesiastical government; . . ." *Watson v. Jones,* 80 U.S. (13 Wall.) at 724. In a hierarchical setting, courts defer to the decision rendered by the highest church judicatory to which it was presented. *Watson v. Jones,* 80 U.S. (13 Wall.) at 727.

A second, more recently recognized method is the "neutral principles of law" approach. Mentioned in *Presbyterian Church in United States v. Mary Elizabeth Blue Hull Mem. Presbyterian Church, supra,*[1] and more thoroughly discussed in *Maryland & Va. Eldership of Churches of God v. Church of God at Sharpsburg, Inc., supra* (Brennan, J., concurring) and *Jones v. Wolf, supra,* the methodology includes an examination of the deeds, the denomination's constitution, and general state corporation laws to determine ownership, without looking to the structure of the church. The *Jones* Court described the advantages of this methodology.

> The method relies exclusively on objective, well–established concepts of trust and property law familiar to lawyers and judges. It thereby promises to free civil courts completely from entanglement in questions of religious doctrine, polity, and practice. . . . Through appropriate reversionary clauses and trust provisions, religious societies can specify what is to happen to church property in the event of a particular contingency, or what religious body will determine the ownership in the event of a

---

[1]One commentator pointed out this opinion marks the first use of the phrase "neutral principles" in church property cases where the Supreme Court stated "[T]here are neutral principles of law, developed for use in all property disputes, which can be applied without 'establishing' churches to which property is awarded." *Presbyterian Church in United States v. Mary Elizabeth Blue Hull Mem. Presbyterian Church,* at 449; Sirico, *The Constitutional Dimensions of Church Property Disputes,* 59 Wash. U. L.Q. 1, 29 (1981).

schism or doctrinal controversy. In this manner, a reli-
gious organization can ensure that a dispute over the
ownership of church property will be resolved in accord
with the desires of the members.

*Jones v. Wolf,* 443 U.S. at 603–04.

The Supreme Court has made it clear that the three are
alternative methods for resolution: ". . . a State may adopt
*any* one of various approaches for settling church property
disputes so long as it involves no consideration of doctrinal
matters, whether the ritual and liturgy of worship or the
tenets of faith." *Maryland & Va. Eldership of Churches of
God v. Church of God at Sharpsburg, Inc.,* (Brennan, J.,
concurring), 396 U.S. at 368; *Jones v. Wolf,* 443 U.S. at
602.[2]

■ The Washington Supreme Court has had occasion to
rule on church property disputes. *See Presbytery of
Seattle, Inc. v. Rohrbaugh, supra,* and cases cited therein.
In *Rohrbaugh,* title to church property was held in the local
Presbyterian church. Most of the active members of the
church voted to withdraw as a body from the United Pres-
byterian Church and requested they be authorized to use
the church property for their own purposes. The request
was denied and the local presbytery instituted suit to
obtain an adjudication of its right to control the church
property. It was Rohrbaugh's theory that under the neutral
principles of law approach articulated in *Maryland & Va.
Eldership of Churches of God v. Church of God at Sharps-
burg, Inc., supra* and *Presbyterian Church in United
States v. Mary Elizabeth Blue Hull Mem. Presbyterian*

---

[2]Two recent cases, *Jones v. Wolf, supra,* and *Serbian E. Orthodox Diocese v.
Milivojevich,* 426 U.S. 696, 49 L. Ed. 2d 151, 96 S. Ct. 2372 (1976), have caused
confusion over whether deference to the decision rendered by the highest church
judicatory to which it was presented in a hierarchical church is mandatory, *or,*
whether civil courts can apply neutral principles even if the church is recognized
to be hierarchical. *See* Note, *Constitutional Guidelines for Civil Court Resolution
of Property Disputes Arising From Religious Schism,* 45 Mo. L. Rev. 518 (1980).
*See also* Justice Powell's dissenting opinion in *Jones v. Wolf,* 443 U.S. at 610. For
our purposes, this confusion need not be resolved in this case because Washington
has adopted the *Watson* compulsory deference rule. See discussion *infra.*

*Church, supra,* control of the church should rest with those seeking withdrawal. The court rejected this analysis, reaffirming its prior adoption of the rule in *Watson v. Jones,* and deferred to the ruling of the Presbyterian Church adverse to the dissenters. The hierarchical nature of the United Presbyterian Church was apparently conceded. Because *Presbytery of Seattle, Inc. v. Rohrbaugh, supra,* reaffirmed the basic thesis of *Watson,* the threshold question in this jurisdiction is whether the Pentecostal Church of God of America is hierarchical or congregational. Southside contends it is congregational, or at most, hierarchical with congregational characteristics as to property ownership. The District contends it is hierarchical and that the governing judicatory has determined ownership lies with the District.

In order to reach its decision in favor of the District it was necessary for the court to decide the General Church is hierarchical and that Southside is a member of the hierarchical church. This brings us to the issue of whether it was proper for the trial court to decide this case on a motion for summary judgment.

█ Summary judgment is available to the District only if the District demonstrates the nonexistence of any genuine issues of material fact, *i.e.,* facts upon which the outcome of the litigation depends. *Lamon v. McDonnell Douglas Corp., supra; Estate of Celiz v. PUD 1,* 30 Wn. App. 682, 638 P.2d 588 (1981); CR 56. Two important principles apply: (1) even if the basic facts are not in dispute, if the facts are subject to reasonable conflicting inferences, summary judgment is improper. *See, e.g., Novenson v. Spokane Culvert & Fabricating Co.,* 91 Wn.2d 550, 588 P.2d 1174 (1979); (2) in ruling on a motion for summary judgment the trial court must consider all evidence and reasonable inferences therefrom in a light most favorable to the nonmoving party. *Lamon v. McDonnell Douglas Corp., supra.*

██ In our opinion whether a church is hierarchical or congregational, and if hierarchical, whether the local church

is a member of the hierarchical church presents questions of fact. *Accord, Antioch Temple, Inc. v. Parekh,* 422 N.E.2d 1337 (Mass. 1981); *Wheeler v. Roman Catholic Archdiocese,* 378 Mass. 58, 389 N.E.2d 966, 968 n.2, *cert. denied,* 444 U.S. 899, 62 L. Ed. 2d 135, 100 S. Ct. 208 (1979); *Kelley v. Riverside Blvd. Indep. Church of God,* 44 Ill. App. 3d 673, 358 N.E.2d 696 (1976); *Braswell v. Purser,* 282 N.C. 388, 193 S.E.2d 90 (1972). *See also Serbian E. Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 49 L. Ed. 2d 151, 96 S. Ct. 2372 (1976) (White, J., concurring). Contrary to the District's position, these facts are material because if the church is hierarchical, and Southside is a member, the court must defer to the decision of the highest ruling body to which the matter was taken, which in this case is the District. The issue of who holds formal title has no relevancy under this theory. If, on the other hand, Southside is independent of and owes no obligation to any higher authority, Southside may have a legitimate argument for the imposition of a trust on the property, legal title to which is held by the District. It is undisputed that Southside voluntarily associated with the General Church, but membership by a church association does not prevent the church government from being congregational. *Nolynn Ass'n of Separate Baptists in Christ v. Oak Grove Separate Baptist Church,* 457 S.W.2d 633 (Ky. 1970), *cert. denied,* 401 U.S. 955, 28 L. Ed. 2d 238, 91 S. Ct. 975 (1971).

Although the hierarchical or congregational structure is a question of fact, summary judgment is available to the District if the trial court can say as a matter of law that the General Church is hierarchical. We have read the record, and it is our view the trial court could not have reached this conclusion as a matter of law.

From a review of the church constitutions and bylaws and the affidavits and depositions which were before the trial court, it appears the General Church exhibits certain characteristics in common with both a hierarchical and congregational church. The church appears to have a pres-

byterian or representative–type form of government.[3] Some authority is exercised by lay people and ministers organized in an ascending succession of district over the local church, General Church over the districts, and the General Convention over all. The constitution and bylaws also stress the independence and sovereignty of the districts and local churches.

The General Church bylaws provide that local churches elect their own pastors and officers and maintain their own form of government, constitution, and bylaws, which may not conflict with those of the district or General Church. Additionally, local churches are required to use Sunday school literature published by the General Church and are required to tithe. The districts have their own representative form of government, elect their own officers and make their own regulations and bylaws, which may not conflict with those of the General Church. All ministers are amenable to the district in matters of conduct and doctrine. The General Church constitution provides specifically that "[t]he Pentecostal Church of God now has, and shall always maintain, a representative and congregational form of government." The Biennial General Convention of the Pentecostal Church of God, composed of representatives from the local churches and districts, is the highest ruling and policymaking body in the organization. Action taken by the General Convention is binding upon the organization in every respect.

The District bylaws emphasize the independence of the local churches: "[n]o District Official shall in any way destroy the rights or interfere with the sovereignty of any

---

[3]At least three different church structures or polity have been identified: "[C]ongregational, presbyterial, and episcopal. In the congregational form, each local congregation is self–governing. The presbyterial polities are representative, authority being exercised by laymen and ministers organized in an ascending succession of judicatories—presbytery over the session of the local church, synod over presbytery, and general assembly over all. In the episcopal form power reposes in clerical superiors, such as bishops." (Footnotes omitted.) Note, *Judicial Intervention in Disputes Over the Use of Church Property*, 75 Harv. L. Rev. 1142, 1143 (1962).

local church." These bylaws provide that before the District Board will take any action in regard to loans or sales, it must have a resolution from the local church showing that the local church met and voted to borrow, sell, etc., the amount involved, and that it is asking the District Board to concur. The bylaws contain suggested language for deeds which would indicate property is held in the name of the local church and its use is intended for the benefit and welfare of the Pentecostal Church of God, Pacific Northwest District, Inc. The District constitution states it is a "prerogative" of the District to have the right to "own, hold in trust, use, sell, convey, mortgage, lease, or otherwise dispose of such property, real or chattel, as may be needed for carrying on its work." Neither the District nor General Church documents provide for withdrawal of a local church.

There is language in these documents to support a finding that the local churches are independent, self–governing, and that the Pentecostal Church of God of America as a whole is congregational. *See, e.g., Braswell v. Purser, supra; Nolynn Ass'n of Separate Baptists in Christ v. Oak Grove Separate Baptist Church, supra;* and *Mullins v. Elswick,* 438 S.W.2d 496 (Ky. 1968). There is also strong language indicating that each judicatory has control over those below it, and each local member church is subject to the rules and directions of the district, General Church, and General Convention, and is therefore hierarchical. *See, e.g., Lowe v. First Presbyterian Church,* 56 Ill. 2d 404, 308 N.E.2d 801, *cert. denied,* 419 U.S. 895, 42 L. Ed. 2d 139, 95 S. Ct. 174 (1974); *Polen v. Cox,* 259 Md. 25, 267 A.2d 201 (1970). Although the basic material facts are not in dispute, in our opinion these documents are sufficiently ambiguous and lead to reasonably conflicting inferences regarding whether the General Church is congregational or hierarchical.[4]

---

[4]Our research has revealed only one case which considered a property dispute involving the particular church involved in this litigation. In *Knight v. Pentecostal Church of God of America, Inc.,* 406 S.W.2d 691 (Mo. 1966), the General Church deeded property to the local on the condition the local church deed the property back once the local church secured a loan to build on the prop-

Additionally, the affidavits and deposition are subject to varying inferences. For this reason we hold the trial court could not have concluded as a matter of law that the General Church is hierarchical.

We take time to caution the trial court concerning its resolution on remand.

The United States Supreme Court has warned against civil courts resolving church property disputes based on religious doctrine and practice. In *Jones v. Wolf,* 443 U.S. 595, 605, 61 L. Ed. 2d 775, 99 S. Ct. 3020 (1979), the Court pointed out the problem:

> In some cases, . . . the locus of control would be ambiguous, and "[a] careful examination of the constitutions of the general and local church, as well as other relevant documents, [would] be necessary to ascertain the form of governance adopted by the members of the religious association." In such cases, the suggested rule would appear to require "a searching and therefore impermissible inquiry into church polity."

(Citation omitted.) Justice Brennan in his concurring opinion in *Maryland & Va. Eldership of Churches of God v. Church of God at Sharpsburg, Inc.,* 396 U.S. 367, 24 L. Ed. 2d 582, 90 S. Ct. 499 (1970) suggested that when identification of the relevant church governing body is impossible without immersion in doctrinal issues or extensive inquiry into church polity, a civil court would have to find another ground for its decision such as the neutral principles of law approach. *Maryland & Va. Eldership of Churches of God v. Church of God at Sharpsburg, Inc.,* 396 U.S. at 370 n.4 (Brennan, J., concurring). *See also* Ellman, *Driven From the Tribunal: Judicial Resolution of Internal Church Disputes,* 69 Cal. L. Rev. 1380, 1406–07 (1981).

 To avoid an impermissible inquiry, the trial court must avoid a specific examination of what body within the

---

erty. This was an action to determine whether under the agreement the local church was required to deed back the property. The court mentioned it was customary to have title to church property vested in the name of the District or General Church. It offers no other guidance.

structure of the church has the power to control church property. It should limit its inquiry to whether the local church is subject to some higher central authority, or is its participation in the General Church a voluntary step which does not trigger secular or ecclesiastical authority over the local church. To this end the finder of fact may have available to it church constitutions and bylaws. Our research has also revealed cases where records from the early formation of the church and disinterested church historians were utilized. *See Braswell v. Purser, supra; Nolynn Ass'n of Separate Baptists in Christ v. Oak Grove Separate Baptist Church, supra.*

It is the purpose of summary judgment to avoid useless trials. *Lamon v. McDonnell Douglas Corp.,* 91 Wn.2d 345, 588 P.2d 1346 (1979). Admittedly, this is a close case because of the indicia of both a congregational and hierarchical structure. For this reason, Southside is entitled to its day in court to have this factual determination made after development of the evidence.

We note that even if Southside is successful in proving the General Church is congregational, it must establish it is entitled to legal title under a recognized principle of property law. The trial court did not reach this issue. We leave it to the trial court to determine whether the parties intended a resulting trust or if, by construction of equity, independent of the intention of the parties, a trust should be implied.

Reversed.

REED, C.J., and PETRIE, J., concur.