[No. 51867-0. En Banc. January 30, 1986.]

CHURCH OF CHRIST AT CENTERVILLE, *Respondent,*
v. ROBERT CARDER, ET AL, *Appellants.*

---

[6]RCW 28A.67.065.

*Ross R. Rakow,* for appellants.

*Velikanje, Moore & Shore, Inc., P.S.,* by *Carter L. Fjeld,* for respondent.

UTTER, J.—This appeal is from a trial court's determination that one of two factions of a congregational church should exercise control over the church property. We affirm the trial court's determination, finding that the constitution of the church controls.

Around 1884, a society of worshippers organized themselves as the Church of Christ at Centerville, an association (Association). On September 3, 1886, property was quitclaimed to the group using the following language: "for ever quit claim to W.D. Smith, Thos. J. Burford and J.T. Stewart, Elders of the Church of Christ at Centerville in Klickitat County Washington Territory." Plaintiff's exhibit 2.

On November 4, 1979, the Association adopted for the first time in its history a constitution and bylaws. The constitution places control over business matters of the church in a church board, consisting of elders and deacons. This document gives the congregation advisory powers only.

In August 1981, the church board hired Robert Carder to be the church preacher. A majority of the church board in June of 1983 decided to terminate Carder's employment. On June 12, 1983, a church board meeting was held where members of the church urged the church board to change its decision regarding Carder's dismissal as preacher. The board refused. After the meeting was adjourned and the church board members left, Preacher Carder and his supporters stayed. They voted to keep Carder and dismiss the elders.

On June 28, 1983, elders Jack Tobin and Wayne Eshelman filed a complaint for injunction entitled "Church of Christ at Centerville, an Unincorporated Association v. Bob Carter [sic]." Clerk's Papers, at 1.

On June 30, 1983, members of the congregation supporting Carder held a meeting to consider the lawsuit. At this meeting, those in attendance approved retention of Carder and adopted a resolution disfellowshipping elders Tobin and Eshelman. With respect to this meeting, there is no evidence of notice being given or that it was called by the church board as required by the Association's constitution.

In July 1983, elder Wayne Eshelman filed articles of incorporation for a nonprofit corporation called Church of Christ at Centerville. In August 1983, Robert Carder and his group incorporated as Centerville Church of Christ. On August 16, 1983, elders Eshelman and Tobin deeded the Association property to the newly formed Church of Christ at Centerville corporation. In October 1983, pleadings were amended to reflect, among other things, the new corporations as parties.

On July 26 and 27, 1984, a bench trial was held in Klickitat County before the Honorable Ted Kolbaba. The report of proceedings of the trial is not before this court. On August 20, 1984, Judge Kolbaba entered his findings of fact, conclusions of law and issued a memorandum opinion. He also issued a writ ordering Carder out of the parsonage and restoring control to the Association. On September 7, 1984, the judge amended his judgment to reflect that con-

trol was not given to either named party, that is the corporations, but rather to the Association to be exercised by the two elders, Eshelman and Tobin, or their successors.

Carder and Centerville Church of Christ filed a notice of appeal with Division Three of the Court of Appeals.

Subsequently, on October 7, 1984, Carder and Centerville Church of Christ held a meeting. This meeting was alleged to be the annual meeting authorized and mandated in the Association's constitution. Having had this meeting, Carder and Centerville Church of Christ made a CR 60(b) motion for relief from judgment before the trial court, arguing that the October 7, 1984, meeting evidenced that they were the successors to the Association. The trial court denied the motion and issued a second memorandum opinion.

Carder and Centerville Church of Christ filed a second notice of appeal. Division Three consolidated the two appeals and certified them to this court.

The issue we must decide is whether the trial court correctly ascertained and applied the principles of governance of this congregationally organized church to resolve the dispute over church property between the two factions that each claim to be successor to the church.

The first amendment to the United States Constitution prohibits the court from "entangling itself in matters of church doctrine and practice." *Southside Tabernacle v. Pentecostal Church of God,* 32 Wn. App. 814, 817, 650 P.2d 231 (1982). However, under certain circumstances, the court has jurisdiction and authority to resolve church property disputes. *Watson v. Jones,* 80 U.S. (13 Wall.) 679, 20 L. Ed. 666 (1872); *Jones v. Wolf,* 443 U.S. 595, 603, 61 L. Ed. 2d 775, 99 S. Ct. 3020 (1979); *Presbytery of Seattle, Inc. v. Rohrbaugh,* 79 Wn.2d 367, 485 P.2d 615 (1971), *cert. denied,* 405 U.S. 996, 31 L. Ed. 2d 465, 92 S. Ct. 1246 (1972); *Southside Tabernacle v. Pentecostal Church of God, supra.*

*Watson v. Jones, supra,* outlined the three general situations in which a church property dispute may be presented. They are (1) when the property is devoted to the support of

a specific religious belief; (2) when the property is held by a strictly congregational or independent form of church government; and (3) when the property is held by a hierarchical church. *Watson,* at 722. Subsequent case law has recognized in the *hierarchical setting,* the property issue may be addressed in three ways. They are (a) pursuant to *Watson v. Jones, supra,* which requires deference to the highest hierarchical body, (b) according to neutral principles of law which may not necessarily coincide with the highest hierarchical body's decision, and (c) according to legislation which governs church property arrangements in a manner that precludes state interference in doctrines. *Presbyterian Church in United States v. Mary Elizabeth Blue Hull Mem. Presbyterian Church,* 393 U.S. 440, 449, 21 L. Ed. 2d 658, 89 S. Ct. 601 (1969); *Maryland & Va. Eldership of Churches of God v. Church of God at Sharpsburg, Inc.,* 396 U.S. 367, 370, 24 L. Ed. 2d 582, 90 S. Ct. 499 (1970) (Brennan, J., concurring); *Jones v. Wolf, supra; Southside Tabernacle v. Pentecostal Church of God, supra.*

Here, no hierarchical church is involved. There is no higher church body to which the aggrieved parties can appeal or to which this court can defer. Also, no radical departure from the tenets of the church exists, nor did the original transfer of property to the church condition its use on certain doctrines being followed. We are dealing with a congregational church.

Appellants Carder and Centerville Church of Christ argue that in a congregational church, the only rule is that the majority rules and that their group represents the majority. They offer *Church at Seattle v. Hendrix,* 70 Wn.2d 302, 422 P.2d 483 (1967) as authority for this proposition. In *Hendrix,* however, the parties conceded that in a congregational church the majority rules. *Hendrix,* at 302–03. While it is true that in a congregational church setting the majority may rule, it does not follow that if a congregational church is involved, the majority must rule. *Watson v. Jones, supra,* and *Southside Tabernacle v. Pentecostal*

*Church of God, supra,* explain that a congregational church is one governed solely within itself "either by a majority of its members *or by such other local organism as it may have instituted for the purpose of ecclesiastical government . . .*" (Italics ours.) *Watson,* at 724; *Southside Tabernacle,* at 819.

In *Watson,* it was explained that when a schism exists in a congregational church which leads to a separation into distinct and conflicting bodies,

> the rights of such bodies to the use of the property must be determined by the ordinary principles which govern *voluntary associations. If* the principle of government in such cases is that the majority rules, then the numerical majority of members must control the right to the use of the property. *If there be within the congregation officers in whom are vested the powers of such control, then those who adhere to the acknowledged organism by which the body is governed are entitled to the use of the property.*

(Italics ours.) *Watson,* at 725.

The Association's constitution vested powers of control of business matters in the church board. It was pursuant to this authority that a majority of the church board decided to terminate Carder as preacher. In *Bower v. Root,* 169 Wash. 671, 14 P.2d 965 (1932), this court recognized the validity of the church officers' actions when authorized by church rules, even though such actions contravened the wishes of the majority. The trial court ruled correctly when it upheld the church board's dismissal of Carder.

Appellants Carder and Centerville Church of Christ also argue that because the majority rules, they could dismiss the elders. Nothing in the church constitution provides for removal of an elder from office. Bylaw 1 provides that the term of office for an elder shall be 5 years. The constitution provides that elections will be held at the annual meeting. The constitution does not provide, however, that fellowship may be withdrawn from a member as outlined in the New Testament. Disfellowship abrogates all rights to hold office. Carder and Centerville Church of Christ tried to disfellow

elders Eshelman and Tobin at a special meeting. The trial court limited its assessment to whether the procedural church rules for calling meetings were followed and correctly found they were not.

Appellants Carder and Centerville Church of Christ argue that according to the language of the trial court's rulings, they are the successors to the Association and thus entitled to control the Association's property. The trial court disagreed and denied their CR 60(b) motion.

The trial court's original conclusion of law 6 filed following the first trial on August 20, 1984, stated "That the property of the Church is vested in and must now be restored to the Plaintiff as Elders in trust for the association known as the Church of Christ at Centerville." Clerk's Papers, at 28. Later, at the appellants' insistence, an amended judgment was entered by the court as follows:

(2.) That the legal title of all Church property as described in the Complaint herein is hereby and forthwith restored to the Elders of the Church of Christ at Centerville, an association, and/or their successors, in trust, for the benefit of the members of said association.

(3.) That the Writ of Restitution previously issued remains in full force and effect restoring to the Elders of the Church of Christ at Centerville, an association, Wayne Eshelman and Jack Tobin, and their successors, possession of the property described in the Complaint, PROVIDED HOWEVER, that this Order shall be so construed and such Writ of Restitution so enforced in such manner as shall not bar any nondisruptive worshipper from attending any Church of Christ at Centerville, an association, function or services;

Clerk's Papers, at 30. The argument of Carder and Centerville Church of Christ focuses only on the "association or its successors" language. They argue that their meeting on October 7, 1984, where they elected new elders in accordance with the requirement of the Association's constitution proves they are the successor to the original Association. We are not persuaded by this argument. First, both factions at the time had already incorporated. Second, the

church property had already been deeded by the elders to the new Church of Christ at Centerville corporation. Carder and Centerville Church of Christ never questioned or litigated before the trial court whether the elders' action of transferring the property was proper. The issue is therefore not before us.

The trial court carefully assessed the parties' arguments and did not become involved in areas of religious doctrine or belief. It correctly recognized the Association church as congregational and applied the neutral provisions of the Association's constitution to find the church board had the authority to terminate the preacher and found the other actions of Carder and Centerville Church of Christ to be ultra vires. Issues regarding the validity of subsequent transfer of the property were not presented to the trial court. We affirm the determinations of the trial court.

DOLLIVER, C.J., BRACHTENBACH, DORE, PEARSON, ANDERSEN, CALLOW, and DURHAM, JJ., and CUNNINGHAM, J. Pro Tem., concur.