49 Wn. App. 441 (1987)
743 P.2d 848
ORGANIZATION FOR PRESERVING THE CONSTITUTION OF ZION LUTHERAN CHURCH OF AUBURN, WASHINGTON, Appellant,
v.
JOSEPH E. MASON, ET AL, Respondents.
Nos. 18179-3-I; 19555-7-I.
The Court of Appeals of Washington, Division One.
October 12, 1987.
*442 Everett Holum and McCarthy, Holum, Golob & Casseaux, for appellant.
Robert C. Van Siclen and Smythe, Van Siclen & Sosa, for respondents.
SCHOLFIELD, C.J.
The Organization for Preserving the Constitution of Zion Lutheran Church of Auburn, Washington (hereinafter the Organization) appeals the trial court's dismissal of its complaint against Joseph E. Mason and Zion Lutheran Church of Auburn (hereinafter the Church), arguing the trial court erred in finding it lacked jurisdiction to interpret an election provision in the church constitution. Consolidated with this case is the Organization's appeal from the trial court's subsequent denial of its motion to vacate based upon newly discovered evidence. We reverse and remand this case for trial.

FACTS
The Zion Lutheran Church of Auburn is a member of the Pacific Northwest District of the National Lutheran Church-Missouri Synod (LC-MS). The Organization is comprised of members of the Zion Lutheran congregation who opposed the election of Joseph Mason as the new church pastor.
On June 9, 1985, the voting members of Zion Lutheran's congregation met to call a new pastor to fill the vacant senior pastor position. In attendance at that meeting was Pastor Dick Allen representing the District Synod. This dispute arose regarding the meaning of article 5, section 2 of Zion Lutheran's constitution, which read:

*443 The candidate receiving the majority of all votes cast shall, upon unanimous approval, be declared elected.
(Italics ours.) Although Mason received a majority of the votes cast at the meeting, several members of the congregation objected to his nomination for pastor. Nevertheless, after some discussion and with the apparent concurrence of Pastor Allen, the chair ruled any further objections to Mason's nomination invalid and declared a unanimous ballot.
The dispute was referred for resolution to Reverend Erhart Bauer, president of the District Synod, who met with the parties and after consulting the president of the LC-MS, "counseled" the parties as follows:
1. The objections voiced as reasons for not making the vote unanimous are not valid.... Consequently, [Mason] is an eligible candidate on the call list.
2. Zion congregation is a member of the LCMS and subject to Synodical By-Law 1.19e. "While retaining the right of brotherly dissent, members of the Synod are expected as part of the life together within the synodical fellowship to honor and to uphold the resolutions of the Synod ..."
3. The conscience of those who hold a descending [sic] position ... can be respected by casting an abstention vote, rather than blocking unanimity.
4. The congregation may want to affirm the ruling of the chair by vote.
5. Since the appeal has been heard, the call may be issued to Pastor Joe Mason as Pastor of Zion congregation.
A call was subsequently issued to Pastor Mason on July 21, 1985. The following December, the church congregation approved an amendment to its constitution and bylaws, with the effect of eliminating the unanimity requirement of article 5 in favor of a provision requiring a mere majority.
The Organization sought to enjoin the installation of Mason as pastor and moved for summary judgment to enforce the church constitution, or in effect asked for a declaratory judgment that Zion Lutheran's constitution required a unanimous ballot in order to issue a call for a *444 pastor. In response, the Church moved to dismiss the Organization's complaint on the ground the dispute involved ecclesiastical matters over which the civil court lacked jurisdiction, and argued that, in any event, a reasonable interpretation of the constitutional provision at issue would affirm its position. The court dismissed the Organization's complaint with prejudice on March 20, 1986. The court's order does not expressly state the grounds for the dismissal.
In September 1986, the Organization brought a motion to vacate the court's judgment based upon newly discovered evidence. This evidence consisted of two letters, one dated January 23, 1986, from the Pacific Northwest District Synod Committee on Constitutional Matters and addressed to Pastor Mason. In that letter, the committee acknowledged that article 5 of Zion Lutheran's constitution, as originally written, required a unanimous vote, which the committee concluded could not "be established Biblically or from the Confessions." The committee suggested a way Zion Lutheran might amend the provision to require only a three-fifths majority.
The second letter, dated June 1986, was written by the secretary of LC-MS and addressed to Rick Kortum, a member of the Organization. In response to an inquiry from Kortum, the secretary's letter stated that, when a congregation adopts a constitution and bylaws, the synod assumes and expects the congregation to abide by them. The Organization argued these letters were evidence the District and the National Synod act in an advisory capacity only and that they supported the Organization's interpretation of the local church's constitution.
Pending the trial court's decision on its motion to vacate, the Organization asked leave of this court to supplement the Clerk's Papers in its first appeal with these two letters. That motion was denied by the commissioner on the ground "[t]his court will only consider matters presented to the trial court, RAP 9.12". The same day, the trial court denied the Organization's motion to vacate its judgment. *445 Subsequently, the Organization brought a separate appeal from the court's denial of its motion. That appeal was later consolidated with this case.

JURISDICTION
The Church argues the trial court correctly dismissed the Organization's complaint for want of subject matter jurisdiction. We disagree. The first amendment to the United States Constitution prohibits the court from "entangling itself in matters of church doctrine and practice", Southside Tabernacle v. Pentecostal Church of God, 32 Wn. App. 814, 817, 650 P.2d 231 (1982), "but the courts do have jurisdiction, as to civil, contract and property rights which are involved in, or arise from, a church controversy." Reid v. Johnston, 241 N.C. 201, 204, 85 S.E.2d 114, 117 (1954).
[1] Cases from other jurisdictions provide examples of disputes within religious societies over which the civil courts have exercised jurisdiction. For example, Smith v. Riley, 424 So.2d 1166 (La. Ct. App. 1982) held that the trial court had authority to determine whether a church board of trustees was legally constituted and to issue orders necessary to enforce the church's compliance with its own articles of incorporation. Similarly, it has been held that a church member who claimed that his church board of directors was not elected according to the procedure set forth in the church charter had a right to have his claim heard by a civil court. Wilkerson v. Battiste, 393 So.2d 195 (La. Ct. App. 1980). In Umberger v. Johns, 363 So.2d 63 (Fla. Dist. Ct. App. 1978), the court held that civil courts may apply and enforce principles of parliamentary procedure, and in Eisenberg v. Fauer, 25 Misc.2d 98, 200 N.Y.S.2d 749 (1960), the court determined it had jurisdiction over religious corporations where matters not of an ecclesiastical nature were involved.
The disagreement in the case at bar arose over the proper interpretation of a provision in Zion Lutheran's constitution regarding elections. The Church argues that, since no property interest is involved, the civil courts cannot *446 interfere. However, as the cases cited above demonstrate, the civil courts have often taken cognizance of this type of issue. See, e.g., Smith v. Riley, supra. Here, the court was simply asked to construe an ambiguous provision in what amounts to a contract between the members of the congregation, dealing with a purely procedural question. No ecclesiastical or doctrinal issues are involved.
Church of Christ v. Carder, 105 Wn.2d 204, 713 P.2d 101 (1986) is in accord with the conclusion that an issue such as the one presented here is within civil court jurisdiction in Washington. Carder involved an appeal from a trial court's determination that one of two factions of a congregational church should exercise control over the church property. The case arose in the context of a property dispute, but what the court actually decided was that the trial court had properly applied neutral provisions of the church constitution to find the church board had the authority to terminate the preacher and that he and the dissenting church organization had acted ultra vires in attempting to disfellow two church elders. 105 Wn.2d at 211.
However, our jurisdictional inquiry does not stop with a determination that this dispute is amenable to civil court resolution. We must also examine the intrinsic characteristics of the church denomination involved here and determine whether the civil courts must defer to mechanisms within that organization, which were designed to resolve and render binding decisions in such disputes.
Although such is not the case here, where property rights are involved, the United States Supreme Court has held that a state may adopt various approaches for the settling of the dispute, so long as the court does not consider doctrinal matters. Jones v. Wolf, 443 U.S. 595, 602, 61 L.Ed.2d 775, 99 S.Ct. 3020 (1979). However, of these constitutionally permissible approaches, only two have been distinctly identified  the "polity" approach and the "neutral principles" approach.
The polity approach focuses upon the organizational structure of the church in question to determine whether *447 the local church is congregational (independent) or whether it is a subordinate unit of a hierarchical organization. Watson v. Jones, 80 U.S. (13 Wall.) 679, 20 L.Ed. 666 (1872). When the local church is congregational, that is, governed independent of any other ecclesiastical body, the property dispute is resolved "by the ordinary principles which govern voluntary associations." Watson v. Jones, supra at 725. However, when the local church is a subordinate member of some general church organization in which there are superior ecclesiastical tribunals, the court must defer to and enforce a decision of the highest church tribunal that has ruled on the question. 80 U.S. at 727.
The neutral principles approach, on the other hand, relies exclusively upon objective, well established concepts of trust and property law and is flexible enough to accommodate all forms of religious organizations and polity. Presbyterian Church in United States v. Mary Elizabeth Blue Hull Mem. Presbyterian Church, 393 U.S. 440, 449, 21 L.Ed.2d 658, 89 S.Ct. 601 (1969); Jones v. Wolf, 443 U.S. at 603-04, 606.
When the Washington Supreme Court had the opportunity to rule upon a church property dispute, the court expressly rejected the neutral principles method and, instead, reaffirmed the polity approach of Watson v. Jones. Presbytery of Seattle, Inc. v. Rohrbaugh, 79 Wn.2d 367, 485 P.2d 615 (1971), cert. denied, 405 U.S. 996 (1972); see also Southside Tabernacle v. Pentecostal Church of God, supra; accord, Church of Christ v. Carder, supra. Thus, the threshold issue in this jurisdiction, at least when a property dispute is involved, is whether the church in question is hierarchically or congregationally organized. We see no logical reason why a different approach should be used to determine when the civil courts have jurisdiction over religious disputes not involving property.
[2] Therefore, the jurisdictional threshold question remains whether Zion Lutheran Church is an independent congregation or a member of a hierarchically organized church. If the latter is the case, the civil courts must defer *448 to the church hierarchy's resolution of this matter, despite the fact that this type of dispute could otherwise be resolved by a civil tribunal. However, the determination of whether a church is hierarchical or congregational and whether the local church is a member of the hierarchical church presents questions of fact. Southside Tabernacle v. Pentecostal Church of God, supra at 822. Consequently, unless this court can somehow determine as a matter of law that Zion Lutheran Church belongs to a hierarchical organization, the trial court erred in summarily dismissing the Organization's complaint. Hoffman v. Skewis, 35 Wn. App. 673, 675, 668 P.2d 1311 (1983).
The Church maintains that the Organization conceded this issue when it described the structure of the church in its memorandum of authorities below as follows:
The defendant, Zion Lutheran Church of Auburn, Washington, is a member of the national body of the Missouri Synod.... The national synod body is the governing body for all local congregations that are members of said synod. The national body is broken up into regions. The regions have officials who perform many of the governing functions of the national body. The Pacific Northwest District is the region whose officers govern the churches located in the State of Washington. Zion Lutheran Church of Auburn, Washington is a member of the Pacific Northwest District, Missouri Synod.
It should also be pointed out that later in the same document, the Organization states:
The first issue that the court may be called on to decide is whether the civil courts can intervene in an internal dispute within a church body. That issue has been dealt with indirectly over a series of cases dealing with disputes between the parent body of an hierarchical church (such as the Missouri Synod) with church members of said body (such as Zion Lutheran Church of Auburn, Washington).
(Italics ours.)
Indeed, from a review of the entire memorandum, it would appear that the Organization took the position below that, despite the hierarchical structure of the church, the *449 trial courts could apply the "neutral principles" approach and resolve this dispute. Unfortunately for the Organization, the neutral principles approach has not been embraced by any court in this jurisdiction.
The Organization argues, however, that since the trial court never considered whether Zion Lutheran is hierarchical or congregational and since that issue involves a question of fact, summary judgment on that ground would have been inappropriate. This argument is persuasive, considering the moving party below, the Church, had the burden of showing the court lacked jurisdiction and never raised this issue. The Church's position before the trial court was that the dispute involved ecclesiastical questions over which the court could not exercise jurisdiction, an argument we have already rejected.
We recognize that when reasonable minds could reach but one conclusion, even questions of fact may be determined as a matter of law. LaPlante v. State, 85 Wn.2d 154, 531 P.2d 299 (1975). However, our review of the record convinces us that this issue was never properly presented for resolution by the trial court, and where the record is insufficient for the appellate court to review a crucial issue, we will remand to the trial court. Erickson v. Bank of Cal., 28 Wn. App. 337, 346, 623 P.2d 721 (1981), modified, 97 Wn.2d 246, 643 P.2d 670 (1982).
More importantly, we find that, based upon the record before us, there is no binding dispute resolution process within the church structure. Both parties agreed during oral argument before this court that the procedure provided for in the LC-MS national constitution is advisory only. Let us assume that rather than ruling as he did, Reverend Bauer had sided with the Organization, but Pastor Mason and the local church had simply ignored that decision. If the civil courts denied jurisdiction, the Organization would be without a remedy. The Organization is entitled to a forum which can make a binding decision on the issues presented in this appeal.
Accordingly, we reverse and remand this case for trial, *450 and since the Organization has prevailed on appeal, we deny the Church's request for attorney's fees, which the Church based upon RAP 18.9.[1]
PEKELIS, J., concurs.
WILLIAMS, J. (dissenting)
I dissent. Although the majority recognizes that the constitution prohibits a court from entangling itself in matters of church doctrine and practice, majority opinion, at 445, it nevertheless requires the trial court to pass judgment on Zion Lutheran Church's call of a pastor  essentially a spiritual endeavor. See Numbers 11:16-17, :24-25; Matthew 9:35-38, 28:18-20; John 20:19-23; Acts 6:2-7; 2 Corinthians 3:6; Ephesians 4:7-12; Hebrews 5:1-10. There is an element of divine guidance in the calling of a pastor; to hold otherwise would be to deny the spirituality of the church. The diploma of vocation by which the congregation extended the call to Pastor Mason emphasizes its spiritual nature:
To Pastor Joseph E. Mason, Jr. of Zion Lutheran Church, Auburn, Washington
Having called on the Lord, our God, for guidance and in the exercise of the authority with which He has vested His church on earth, we, Zion Lutheran Congregation, Lutheran Church-Missouri Synod of Auburn, Washington, in lawful meeting on June 9, 1985, have elected you to the office of Pastor and herewith extend to you this formal notification of your solemn call.
...
We pray God, the Father of our Lord Jesus Christ, who has moved us to extend our call to you, to convince you by His Holy Spirit that it comes from Him; to induce you to accept it; to conduct you safely to your field of labor; and to bless your ministrations to the glory of His holy name, the building of His church, the temporal and eternal welfare of many people, and your own great joy and blessing.
*451 There are no ecclesiastical courts in this state. Herzl Congregation v. Robinson, 142 Wash. 469, 472, 253 P. 654 (1927). The propriety of a congregation's choice of a pastor is not within the civil jurisdiction. See Gonzalez v. Roman Catholic Archbishop, 280 U.S. 1, 16, 74 L.Ed. 131, 50 S.Ct. 5 (1929); Elmora Hebrew Ctr., Inc. v. Fishman, 215 N.J. Super. 589, 522 A.2d 497, 501 (1987); Wilkerson v. Battiste, 393 So.2d 195, 197 (La. Ct. App. 1980); Anthony v. Cardin, 91 Misc.2d 506, 398 N.Y.S.2d 215, 216 (1977); Putman v. Vath, 340 So.2d 26 (Ala. 1976); Protestant Episcopal Church in Diocese of N.J. v. Graves, 161 N.J. Super. 230, 391 A.2d 563, 574 (1978), aff'd, 167 N.J. Super. 563, 401 A.2d 548 (1979), aff'd, 83 N.J. 572, 417 A.2d 19 (1980), cert. denied sub nom. Moore v. Protestant Episcopal Church in Diocese of N.J., 449 U.S. 1131 (1981); Simpson v. Wells Lamont Corp., 494 F.2d 490 (5th Cir.1974); Western Conference of Original Free Will Baptists v. Creech, 256 N.C. 128, 123 S.E.2d 619, 627-28 (1962); Mason v. Winstead, 196 Tenn. 268, 265 S.W.2d 561, 563 (1954); Edwards v. Thomas, 204 Ga. 766, 51 S.E.2d 855 (1949).
I would affirm the judgment of dismissal.
NOTES
[1] Our decision to remand this case for trial makes it unnecessary to decide the Organization's consolidated appeal from the trial court's denial of the Organization's motion to vacate its judgment.