# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| KIDANE BEYENE, GEBAR OGBE, TAAME BEYENE, and TEMESGHEN SAHLU, | No. 78215-1-I |
| Appellants, | DIVISION ONE |
| | UNPUBLISHED OPINION |
| v. | |
| TESFALDET TEKLE, ASEFASH GHIRMAY, GHIRMAY SEQUAR, ISSAC MEDIN, OGBAMICHAEL GOITOM, GAIM DESTA, DEACON SHISHAY MEBRAHTU, and DEBRE GENET KIDISTI SELLASSIE ERITREAN ORTHODOX CHURCH, a Washington nonprofit corporation (as nominal defendant for derivative purposes only), | |
| Respondents. | FILED: May 20, 2019 |

ANDRUS, J. — Four members of the Debre Genet Kidisti Sellassie Eritrean Orthodox Church[1] appeal the trial court's dismissal of their claims against former elected members of the Church Administration. Beyene claims, among other things, that these individuals embezzled Church funds, misused Church assets, and failed to adhere to the Church's charter in conducting financial audits, holding meetings, and conducting elections.

---

[1] We will refer to the appellants collectively as "Beyene" for purposes of clarity. We will refer to the respondents collectively as "the Church."

The trial court dismissed all of Beyene's claims, concluding the court lacked subject matter jurisdiction. Because there are disputed issues of fact that must be resolved before we can determine the applicability of the ecclesiastical abstention doctrine, the ministerial exception, and the doctrine of deference to ecclesiastical tribunals, we reverse and remand to the trial court to resolve these disputes of fact.

## FACTS

Debre Genet Kidisti Sellassie Eritrean Orthodox Church, originally formed in 1995, is a registered nonprofit corporation under the Washington Nonprofit Corporation Act, chapter 24 RCW. It has between 100 and 120 active members and another 100 to 150 inactive members. It is a part of the Eritrean Orthodox Tweahdo Church Diocese of North America. The word "Tweahdo" is a Ge'ez[2] word meaning "being made one" and refers to the belief in the one single unique "Nature of Christ."

In January 2015, the church members adopted a charter outlining the Church's mission, structure, and leadership, the responsibilities of its priests and deacons, and a dispute resolution process.[3] Under the charter, the Church is managed by a Church Administration, made up of a chairman, vice chairman, secretary, treasurer, cashier, property manager, and head of Sunday school. The Church Administration is elected every two years at what it calls a "Congress,"

---

[2] Ge'ez is an ancient language of Ethiopia from the South Semitic language family. Its modern descendants are Tigre and Tigrinya. Heron, Cyril A., "A Christian Oasis: The Role of Christianity and Custom in the Law of Ethiopia," 51 Cornell Int'l L. J., no. 3, 753, 758 n. 43 (2018).

[3] Beyene characterized the charter as the equivalent of a set of articles and bylaws of a corporation. The Church, however, characterized the document as a "religious" document that specifies how members will resolve their disputes internally.

identified as the highest authority of the Church. The Congress, composed of at least 51 percent of the Church's members, also elects an internal audit committee.

Haile Woldelibanos, the current chairman of the Church, testified that the Church has a hierarchical organizational structure led by the Congress. However, Father Tesfamariam Weldeslassie, an ordained priest with the Church for over 25 years, testified that the Church is not hierarchical but is instead a congregational church owing no duty or allegiance to any higher religious body.

Beyene brought this lawsuit as a derivative action on behalf of the Church against certain members who served as the Church Administration between 2015 and 2017. Beyene alleged that (1) the former Church Administration members failed to conduct regular meetings in violation of article 23 of the charter; (2) the March 25, 2017 election was not conducted per the charter; (3) the charter articles governing the contractual responsibilities of the Church's priests were violated; and (4) the former chairman distributed Church funds to his family members and others in violation of the charter. Beyene sought a court order requiring a third-party audit of the Church's property; requiring the Church to operate "in accordance with its Articles of Incorporation and its Bylaws;" awarding damages against individual respondents; and enjoining the individual respondents from involvement with the Church as members of any future Church Administration.

The Church moved to dismiss the complaint, contending that under the First Amendment, the trial court lacked subject matter jurisdiction to adjudicate claims involving the Church. The Church presented evidence that the Church Administrators named in the lawsuit were tasked with ensuring that the spiritual

mission of the Church was fulfilled, guided by the spiritual principles of the Church. These Church Administrators—all volunteers—were elected during a 2017 Congress, and were responsible for overseeing general meetings, strengthening the relationship of the Church to its members, overseeing religious programs, monitoring religious education programs, overseeing financial matters, and employing priests. Woldelibanos testified that Beyene himself had become dissatisfied with Church Administration only after he was not elected to the Church Administration during the 2017 Congress. He testified that Beyene began to raise concerns about the way in which the prior Church Administration had interpreted religious doctrine and managed the Church's relationship with priests hired by the Church.

Father Weldeslassie, however, testified that nothing in the Church's charter precluded the court from intervening to resolve the members' disputes. He testified that the Church Administration does not have any authority or responsibility for the spiritual or religious aspects of the Church. He stated that responsibility for spiritual or religious aspects is the sole responsibility of the priests and deacons of the Church.

Father Weldeslassie also testified that one of the primary issues in the lawsuit is a request for an audit of Church property, including finances. He stated that the request for financial audits "do not in any way involve Church doctrine or beliefs." He denied that the dispute involved any Church spiritual matters. A former Church Treasurer, Habte Micheal Ogba Micheal, and another founding member of the Church, Alem G. Andemariam, similarly testified that the financial

concerns raised by Beyene do not involve questions of Church doctrine or spiritual matters.

Furthermore, a former Secretary of the Church, Ghirmai Haile Sequar, and a former Treasurer, Issac Medin, both named defendants in the lawsuit, testified that when they were in office, they were concerned that certain Church Administration officials were not following the Church's bylaws and failed to hold regular meetings, to respond to questions about the management of Church property and cash, to produce useable financial statements, to report all expenses and income, and to conduct accurate audits. They also testified that these concerns did not involve any tenants of the Eritrean Orthodox Church.

The trial court granted the Church's motion to dismiss, concluding that the ecclesiastical abstention doctrine and "the ministerial exception" barred it from exercising subject matter jurisdiction over the claims. It stated that "[t]he Complaint brought by the Plaintiffs implicates ecclesiastical matters and the Church's selection of its spiritual leaders." It concluded that "any decision by this Court would improperly entangle the Court in religious matters contrary to the First Amendment."

The trial court also concluded that the Church is "a hierarchically structured church" with disputes governed by a dispute resolution provision of its charter, that the "Plaintiffs agreed to be bound by the Church's Religious Charter and the Plaintiffs submitted their claims to the decision-making ecclesiastical tribunal of the Church," and that "[i]t should be the Church's tribunal, in light of Church doctrine, policies, and religious beliefs, that resolves the Plaintiffs' dispute, not this Court."

Beyene appeals, challenging the trial court's reliance on these deferential doctrines to conclude it lacked subject matter jurisdiction over his claims.

ANALYSIS

CR 12(b)(1) permits a party to seek dismissal of a lawsuit based on a lack of subject matter jurisdiction. A challenge to subject matter jurisdiction may be either facial or factual. Outsource Servs. Mgmt., LLC v. Nooksack Bus. Corp., 172 Wn. App. 799, 806, 292 P.3d 147 (2013). If the challenge is factual, the trial court must weigh the evidence to resolve disputed jurisdictional facts. Id. at 807. The party asserting subject matter jurisdiction bears the burden of proof on its existence. Id. at 807. When a court grants a CR 12(b)(1) motion based on a factual challenge, the appellate court accepts "the factual determination that underpins the decision unless it is clearly erroneous." Id. at 807 (internal quotation marks omitted) (quoting 2 JAMES WM. Moore, MOORE'S FEDERAL PRACTICE, § 12.30[5], at 12-49 (3d ed. 2012). If the challenge is facial, only the sufficiency of the pleadings is at issue and the existence of subject matter jurisdiction is a question of law that the appellate court reviews de novo. Id.

In this case, the Church raised a factual challenge to the trial court's subject matter jurisdiction. It submitted evidence, by way of declaration testimony, to support its argument that Beyene's claims should be barred by the ecclesiastical abstention doctrine, the "ministerial exception," and the doctrine of deference to ecclesiastical tribunals. Beyene, in turn, submitted controverting declaration testimony to defeat the applicability of these doctrines.

Courts generally may exercise subject matter jurisdiction over civil, contract, and property rights involving church controversies. Org. for Preserving the Constitution of Zion Lutheran Church of Auburn v. Mason (Mason), 49 Wn. App. 441, 445, 743 P.2d 848 (1987); see also Jones v. Wolf, 443 U.S. 595, 602, 99 S. Ct. 3020, 61 L. Ed. 2d 775 (1979) (civil courts have the general authority to resolve property disputes among factions within a congregation). Additionally, controversies within a church over its leaders' compliance with its articles of incorporation, bylaws, or constitution may be amenable to civil court resolution.[4] Mason, 49 Wn. App. at 445-46. And secular courts may, in general, resolve employment contract disputes asserted against a church. Gates v. Seattle Archdiocese, 103 Wn. App. 160, 166-67, 10 P.3d 435 (2000).

But because the First Amendment prohibits courts from entangling themselves in matters of church doctrine or practice, several doctrines have developed to limit civil courts' subject matter jurisdiction. The ecclesiastical abstention doctrine instructs courts to abstain from resolving disputes concerning a religious organization's ecclesiastical affairs. Rentz v. Werner, 156 Wn. App. 423, 433, 232 P.3d 1169 (2010). "The First Amendment does not provide churches with absolute immunity to engage in tortious conduct. So long as liability is predicated on secular conduct and does not involve the interpretation of church doctrine or religious beliefs, it does not offend constitutional principles." C.J.C. v. Corp. of Catholic Bishop of Yakima, 138 Wn.2d 699, 728, 985 P.2d 262 (1999)

---

[4] Indeed, this very Church was previously a party in a lawsuit in which members challenged the legality of board elections. See Kidisti Sellassie Orthodox Tewehado Eritrean Church v. Medin, noted at 118 Wn. App. 1022 (2003) (unpublished) (court concluded election notice failed to comply with RCW 24.03.080).

(citing <u>Sanders v. Casa View Baptist Church</u>, 134 F.3d 331, 336 (5th Cir.), <u>cert. denied</u>, 525 U.S. 868 (1998)).

Whether the ecclesiastical abstention doctrine bars any claim requires a factual inquiry, decided on a case-by-case basis. <u>See</u> <u>Mason</u>, 49 Wn. App. 446 (interpretation of an ambiguous contractual provision between congregation members did not involve any ecclesiastical or doctrinal issues and was therefore "within civil court jurisdiction in Washington"); <u>Barnett v. Hicks</u>, 114 Wn.2d 879, 880, 792 P.2d 150 (1990) (ecclesiastical abstention doctrine did not bar the court from looking at whether a church's articles and bylaws had been violated); <u>Gates</u>, 103 Wn. App. at 166 (ecclesiastical abstention doctrine barred the court from analyzing a pastoral assistant's employment contract because the dispute involved evaluation of religious scripture, doctrine, and principles).

A second doctrine asserted by the Church is the "ministerial exception" to civil jurisdiction. Controversies touching on the relationship of a church and its ministers are normally avoided by secular courts because the "introduction of government standards to the selection of spiritual leaders would significantly, and perniciously, rearrange the relationship between church and state." <u>Gates</u>, 103 Wn. App. at 166 (quoting <u>Rayburn v. Gen. Conf. of Seventh-Day Adventists</u>, 772 F.2d 1164, 1169 (4th Cir. 1985). This "ministerial exception" would preclude a court from adjudicating any claim that involves a church's selection or termination of its ministers or spiritual leaders. <u>Id.</u> at 168-69, <u>Elvig v. Ackles</u>, 123 Wn. App. 491, 496, 98 P.3d 524 (2004) ("civil courts may not adjudicate matters involving a church's selection of its spiritual leaders.")

The final doctrine raised in this case is the doctrine of deferring to the decision of an ecclesiastical tribunal. A court may decline to resolve controversies within a church when it has its own tribunal process for resolving them. Mason, 49 Wn. App. at 445-46. This jurisdictional inquiry requires a court to "examine the intrinsic characteristics of the church denomination involved . . . and determine whether the civil courts must defer to mechanisms within that organization, which were designed to resolve and render binding decisions in such disputes." Id. at 446.

Under Mason, the focus is on the organizational structure of the church in question. If the church is "congregational," or governed independent of any other ecclesiastical body, the dispute should be resolved by the ordinary principles governing nonprofit corporations. Id. at 447. If the local church, however, is a subordinate member of some general church organization in which there are superior ecclesiastical tribunals, the court must defer to and enforce a decision of the highest church tribunal that has ruled on the questions. Id. "The determination of whether a church is hierarchical or congregational and whether the local church is a member of the hierarchical church presents questions of fact." Id. at 448.

Beyene has raised a number of different claims, some of which may fall within the jurisdiction of civil courts, but some of which may not, depending on the facts. Beyene alleged embezzlement, conversion, and the illegal distribution of charitable assets. For example, the complaint alleged that certain Church Administration members unlawfully distributed Church funds to friends and family, which appears to be purely secular conduct. These allegations, on their face,

could fall within a civil court's jurisdiction to resolve property disputes without implicating any church doctrine; therefore, they would not implicate ecclesiastical matters.

Beyene also alleged that the former Church Administration members failed to conduct regular member meetings, failed to properly report on the Church's finances, and failed to approve employment contracts with the Church's priests. Beyene asserted a claim of "tortious interference," alleging that individual defendants, acting for their own interests, "are attempting to cause, and have caused the Church to fail to provide the services set forth in the Bylaws."[5] Beyene has also asserted a claim of "unauthorized assumption of corporate powers," alleging that individual defendants have "purported to act as the Church, a nonprofit corporation without authority to do so." Finally, Beyene requested, among other things, a court order enjoining individual defendants from having any future involvement as members of the Church Administration or as auditors.

Some of these allegations or claims could, depending on the facts, infringe on or implicate church practice or doctrine. For example, Woldelibanos testified the charter is a religious document under which the Administration members are tasked with making decisions consistent with the Church's sectarian mission. He also testified that Beyene's concerns are not related to financial mismanagement, but are instead focused on how the Administration was interpreting religious doctrine and managing relationships with priests the Church had hired. Beyene's evidence, however, indicates the charter is not religious in nature and the

---

[5] Beyene confirmed at oral argument that any reference to bylaws in the complaint is a reference to the charter.

Administration members have no spiritual or religious responsibilities. Father Weldeslassie testified that none of the individual defendants had any spiritual or religious responsibilities within the Church.

It is also unclear from the complaint if Beyene challenged any decision by the former Church Administration members to retain any priests or seeks a court order to enjoin spiritual leaders from retaining such roles within the Church. Such claims or requests for relief could in fact interfere with the Church's ecclesiastical affairs. If the trial court were to conclude that Beyene's claims relating to the priests' contracts or the request to bar certain individuals from holding administrative roles are not efforts to dictate who can serve as a spiritual leader in the Church, the ministerial exception would seem inapplicable. On the other hand, if Beyene is challenging the Church members' right to select their own spiritual leaders, the exception might apply.

The record does not indicate that the trial court weighed the evidence to resolve these disputed jurisdictional facts. Because the trial court did not apply the proper standard under Outsource Servs. Mgmt., there are no findings of jurisdictional facts for this court to review.

We also lack sufficient findings to review the trial court's conclusions that the Church is "a hierarchically structured church," or that Beyene "submitted [his] claim to the decision-making ecclesiastical tribunal of the Church." There is no evidence in this record that the Church is a subordinate member of a general church organization with a superior ecclesiastical tribunal or that any such tribunal issued a binding decision on Beyene's claims.

There is a dispute resolution provision in the charter. According to Woldelibanos, article 25 of the charter requires all "misunderstandings" to be resolved by mediation. If mediation is unsuccessful, "members would vote on the decision taken by the mediators." Woldelibanos testified that the Church had selected a team of five mediators to try to help the parties resolve the disputes and if the parties remain unwilling to resolve the matter, "the mediators will make a proposal based on their findings at a general meeting so that the Church members can vote on how to proceed." He stated that "[t]he Church's Charter indicates that the vote by the Church members ultimately determines the outcome of the dispute."

But there is no evidence that disputes must be submitted for resolution to a tribunal outside of the local church itself. A decision of a majority of a church's members is typically not the type of ecclesiastical decision-making process to which civil courts defer. See Southside Tabernacle v. Church of God, 32 Wn. App. 814, 819, 650 P.2d 231 (1982). Father Weldeslassie testified that the Church pays for itself and manages itself and that there is no higher affiliate body that resolves disputes. This evidence suggests the Church has no "ecclesiastical tribunal" of the type referred to in Mason. Where the record is insufficient for the appellate court to review a crucial issue, we must remand to the trial court. 49 Wn. App. at 449.

We conclude there are issues of disputed jurisdictional fact that the trial court must resolve under CR 12(d) before determining the applicability of the doctrine of ecclesiastical abstention, the ministerial exception, or the doctrine of

deferring to an ecclesiastical tribunal. We therefore reverse and remand for further proceedings consistent with this opinion.

Reversed.

Andrus, J.

WE CONCUR:

Chun, J.

Schindler, J.