[No. 41167.    En Banc.    June 3, 1971.]

THE PRESBYTERY OF SEATTLE, INC., *et al., Respondents,* v. JAMES R. ROHRBAUGH *et al., Appellants.*

*Schweppe, Doolittle, Krug & Tausend, Peter E. Paget,* and *Alfred J. Schweppe,* for appellants.

*Perkins, Coie, Stone, Olsen & Williams, Douglas P. Beighle,* and *Robert A. Yothers,* for respondents.

*Malcolm S. McLeod,* amicus curiae.

ROSELLINI, J.—The United Presbyterian Church is an association of local Presbyterian churches governed by a hierarchy which includes, in ascending order, the Session (composed of the pastor and the elders of the local church), the Presbytery (composed of all the pastors and at least one elder from each of the churches within a defined district), the Synod (composed of representative pastors and elders from the Presbyteries within a geographical

region), and the General Assembly (composed of delegations of pastors and elders from all the Presbyteries). These governing bodies are called "judicatories."

The Laurelhurst United Presbyterian Church of Seattle had on its rolls approximately 600 members. The pastor and 183 members, including the trustees and all but one of the elders (the appellants herein), feeling aggrieved by certain doctrinal changes which were adopted in 1967 by the United Presbyterian Church as a part of its constitution, voted to withdraw as a body.

They requested that the Presbytery of Seattle strike the name of the church from its rolls and authorize them to use the church property for their own purposes. Their requests were refused and the Presbytery further advised that there was no authority in the constitution for the members of a church to withdraw as a body. The appellant Rohrbaugh was removed as minister and the Session was dissolved by the Presbytery, which appointed an administrative commission having the powers of Session to administer the affairs of the church for those members who had not withdrawn.

Although the constitution of the church provides for appeals to the judicatories of the Washington-Alaska Synod and the General Assembly of the church, no appeal was taken.

Instead, the appellants, who had apparently comprised most of the active membership of the church, refused to allow the administrative commission to enter the church or to operate with the powers of Session, and the appellant Rohrbaugh continued to act as pastor of the church.

This action was instituted by the Presbytery to obtain an adjudication of its right to control the use and disposition of the church property. That relief was granted by the trial court, which issued an order restraining and enjoining the appellants from interfering with the respondent Presbytery's use and control of the property of the church or diverting that property, and which ordered an accounting by the appellants of all the funds and properties of the church and delivery by them of all the property of the

church, including its books and records and the deed to the church property.

The appellants first suggest that the respondents have no standing to bring this action, citing as authority for this proposition provisions in the church constitution which disclaim for the judicatories any civil jurisdiction. Nowhere in these provisions do the judicatories disclaim their right to petition the courts for relief in civil controversies. The provisions simply acknowledge what is a fact without that acknowledgment—the jurisdiction of church judicatories is ecclesiastical and not civil.

■ Furthermore, as the respondents point out, one of them is a member of the Laurelhurst United Presbyterian Church, representing in a class action all other members who did not withdraw from membership, and their interest in preserving the church property is not questioned. We disagree with the appellants' contention that the respondents do not have standing to bring this action.

Turning to the merits, we find that the appellants rest their appeal upon a contention that they are the "record titleholders" of the property and that no further inquiry need be made by the courts to determine the question of who is entitled to use and control the property. It should be noted at this point that the record title is in the church. The appellants evidently conceive that they comprise the church; and for their claim to a proprietary interest they rely heavily upon a recent Georgia case, *Presbyterian Church in the United States v. Eastern Heights Presbyterian Church*, 225 Ga. 259, 167 S.E.2d 658 (1969).

The opinion in that case appears to be the final disposition of a case which arose in Georgia upon facts very similar to those involved in this case. The Georgia trial court submitted the case to the jury with instructions to determine whether the constitutional changes made by the entire church in 1967 constituted a "substantial departure" from the doctrine espoused by that church when the local church was formed. The jury found that indeed such a departure had occurred, and the trial court ruled, applying

Georgia law, that the local church did not hold title to the property upon an implied trust for the nationwide church.

This decision was affirmed by the Supreme Court of Georgia. The Presbyterian Church in the United States petitioned the United States Supreme Court for certiorari, contending that the courts of Georgia had violated the "establishment clause" of the first amendment to the United States Constitution. Certiorari was granted and the Supreme Court reversed, holding that

> the departure-from-doctrine element of the Georgia implied trust theory requires the civil court to determine matters at the very core of a religion—the interpretation of particular church doctrines and the importance of those doctrines to the religion. Plainly, the First Amendment forbids civil courts from playing such a role.

*Presbyterian Church in the United States v. Mary Elizabeth Blue Hull Memorial Presbyterian Church,* 393 U.S. 440, 21 L. Ed. 2d 658, 89 S. Ct. 601 (1969).

However, the United States Supreme Court did not hold that civil courts have no power to determine controversies concerning church property. It expressly approved the holding of *Watson v. Jones,* 80 U.S. (13 Wall.) 679 (1871), wherein the court refused to decree the termination of an implied trust because of departures from doctrine by the national organization. The court in *Watson v. Jones, supra,* held that members who withdrew from a Presbyterian church, even though they included members of the Session and the trustees, forfeited any right to use the church property.

The church involved in that action was Presbyterian, having precisely the same hierarchical structure as that involved in this action. There legal title was vested in the trustees of the local church; here it is vested in a corporation having trustees, but in both cases, under the church constitution, the right to control the use of the property is vested not in the trustees but in the Session, the Session in turn being subject to control by the Presbytery, the Presbytery by the Synod and the Synod by the General Assem-

bly. The United States Supreme Court took notice of all these matters of church structure, obviously not regarding them as ecclesiastical or doctrinal in nature, but rather matters of agreement among the members concerning their self-government, which it was necessary to examine in order to determine the right to control the property.

The doctrinal dispute in that case arose between certain members of the local church and others who favored the position of the national hierarchy upon the question of slavery, the national having taken a doctrinal position against the institution of slavery which was offensive to one faction of the local church. The factionalism spread to the Presbytery and to the Synod of Kentucky. The parties turned to the courts for resolution of their disagreement about the right to control and use the church property.

The United States Supreme Court in the *Hull* church case quoted the following significant language from *Watson v. Jones, supra,* describing it as language having a "clear constitutional ring":

> "In this country the full and free right to entertain any religious belief, to practice any religious principle, and to teach any religious doctrine which does not violate the laws of morality and property, and which does not infringe personal rights, is conceded to all. The law knows no heresy, and is committed to the support of no dogma, the establishment of no sect. . . . All who unite themselves to such a body [the general church] do so with an implied consent to [its] government, and are bound to submit to it. But it would be a vain consent and would lead to the total subversion of such religious bodies, if any one aggrieved by one of their decisions could appeal to the secular courts and have them [*sic*] reversed. It is of the essence of these religious unions, and of their right to establish tribunals for the decision of questions arising among themselves, that those decisions should be binding in all cases of ecclesiastical cognizance, subject only to such appeals as the organism itself provides for." 13 Wall., at 728-729.

(Footnote omitted.) 393 U.S. at 446.

It would appear certain that the United States Supreme

Court approved the rule laid down in *Watson v. Jones, supra,* that the decision of the highest tribunal of a hierarchical church to which an appeal has been taken should be given effect by the courts in a controversy over the right to use church property. Nevertheless, upon remand the Georgia court refused to apply that rule. It also refused to apply the implied trust doctrine approved by the United States Supreme Court in *Watson v. Jones, supra,* and instead construed the opinion in the *Hull* church case to mean that the trust theory, as well as the theory of a "condition of the trust" must be abandoned.

· We do not find such a holding in the opinion of the United States Supreme Court in the *Hull* case. Nor are we impressed with the rationale employed by the Georgia court in reaching its decision. That court said that the right to use the property rested in the holder of the record title. If we assume that the holder was a corporation, as in this case, and that the members of the corporation were members of the congregation of the named Presbyterian church, we are faced with the conclusion that, under the constitution of the church, only the loyal members of the church could be regarded as members of the congregation.

If the court meant to hold, as the appellants would have us assume, that the property belonged to those former members who had withdrawn from the church, it would seem that the decision falls short of its purpose. There is in it no explanation of the legal route by which title passed from the corporation to the dissidents.

Finally, if the court meant to hold that title was in the trustees, it failed to recognize or resolve the question: what was the nature of their trust? It would appear inescapable that the trust was defined by the provisions of the church constitution, wherein their offices and duties were created.

The United States Supreme Court denied a petition for certiorari to review this decision of the Georgia court. Such a refusal, of course, does not denote approval of the decision of the state court.

■ Be that as it may, we are of the opinion that there

is no necessity to look to the courts of Georgia for guidance in the disposition of this case. This court has adopted the rule of *Watson v. Jones, supra,* in cases of this kind, having held in *Herman v. Plummer,* 20 Wash. 363, 55 P. 315 (1898) and *Hoffman v. Tieton View Community Methodist Episcopal Church,* 33 Wn.2d 716, 207 P.2d 699 (1949), that, in the absence of fraud, where a right of property in an action before a civil court depends upon a question of doctrine, ecclesiastical law, rule or custom, or church government, and the question has been decided by the highest tribunal within the organization to which it has been carried, the civil court will accept that decision as conclusive. The propriety of this rule was again recognized in *Presbyterian Church in the United States v. Mary Elizabeth Blue Hull Memorial Presbyterian Church, supra.* We see no reason to abandon it.

The appellants are not, as they contend, the record titleholders of the property. The record title is in The First United Presbyterian Church of Seattle,[1] a corporation which by its bylaws is subject to the discipline of the United Presbyterian Church, and is governed by a Session which must act in accord with that discipline. The appellants have withdrawn from that church, but according to the decision of the Presbytery of Seattle, from which no appeal was taken, they had no right to withdraw from the church as a body and take with them the name of the church and its property. The pastor, the trustees, and the members of the Session who withdrew forfeited their right to govern the affairs of the church when they did so, according to the decision of the highest tribunal to which an appeal was taken, and consequently the appellants have no right to control the use of the property.[2]

The decree is affirmed.

---

[1]The former name of the Laurelhurst United Presbyterian Church.

[2]*See also Apostolic Faith Mission of Portland, Ore. v. Christian Evangelical Church,* 55 Wn.2d 364, 347 P.2d 1059 (1960), holding that members of a church forfeit any interest they may have in the beneficial use of property when they withdraw from membership.

374

HAMILTON, C.J., FINLEY, HALE, NEILL, STAFFORD, and WRIGHT, JJ., and DONWORTH, J. Pro Tem., concur.

Petition for rehearing denied July 23, 1971.