# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

THE PRESBYTERY OF SEATTLE, a )
Washington nonprofit corporation; THE )
FIRST PRESBYTERIAN CHURCH OF )
SEATTLE, a Washington nonprofit )
corporation; ROBERT WALLACE, )
President of the First Presbyterian )
Church of Seattle, a Washington )
nonprofit corporation; and WILLIAM )
LONGBRAKE, on behalf of himself )
and similarly situated members of )
First Presbyterian Church of Seattle, )
                            )
          Respondents, )

          v. )

JEFF SCHULZ, ELLEN SCHULZ, LIZ )
CEDERGREEN, DAVID MARTIN, )
LINDSEY McDOWELL, GEORGE )
NORRIS, NATHAN ORONA, and )
KATHRYN OSTROM, as trustees of )
The First Presbyterian Church of )
Seattle, a Washington nonprofit )
corporation, )
                            )
          Appellants. )

_____ )

THE PRESBYTERY OF SEATTLE, )
a Washington nonprofit corporation; and )
THE FIRST PRESBYTERIAN CHURCH )
OF SEATTLE, a Washington nonprofit )
corporation, )

No. 78399-8-I

DIVISION ONE

PUBLISHED OPINION

FILED: October 7, 2019

```
                    Respondents,       )
                                       )
         v.                            )
                                       )
JEFF SCHULZ and ELLEN SCHULZ,          )
as individuals and as the marital      )
community comprised thereof,           )
                                       )
              Appellants.              )
                                       )
_____       )
```

LEACH, J. — This consolidated appeal involves a church property dispute and a severance agreement dispute. In Presbytery I, Jeff and Ellen Schulz, former copastors of the First Presbyterian Church of Seattle (FPCS), and six former trustees of FPCS's board of trustees (Board) (together appellants) appeal the trial court's declaratory judgment in favor of FPCS, the Presbytery of Seattle (Presbytery), which is authorized to act on behalf of the Presbyterian Church U.S.A. (PCUSA), and two members of the Presbytery's administrative commission (AC) (together respondents). Appellants contend that the trial court erred in deferring to the AC's determination assuming original jurisdiction over FPCS, rejecting FPCS's disaffiliation from PCUSA, and finding that any interest FPCS had in church property was held in trust for the benefit of PCUSA. In Presbytery II, the Schulzes appeal the trial court's declaratory judgment in favor of Presbytery and FPCS, claiming that the trial court erred in deferring to the AC's determination that their severance agreements with FPCS were invalid and unenforceable.

In Presbytery of Seattle, Inc. v. Rohrbaugh,[1] the Washington Supreme Court established that a civil court must defer to the decision of the highest tribunal of a hierarchical church in a matter involving a church property dispute. To ensure the First Amendment guarantee to the free exercise of religion, Washington courts have extended Rohrbaugh to any civil dispute in a hierarchical church with an internal dispute resolution process. Because no genuine issue of material fact exists about whether the Presbyterian Church is hierarchical or whether it has a binding dispute resolution process, the trial court properly deferred to the AC's determinations about the property and severance agreement disputes. We affirm.

## FACTS

From 1983 until November 15, 2015, FPCS's congregation was ecclesiastically affiliated with PCUSA. FPCS filed its first articles of incorporation in 1874 and its restated articles of incorporation in 1985. These articles recognized FPCS's governing bodies as its "Session" and Board. Its Session, comprised of ministers, elders, and deacons, governed the congregation's ecclesiastical matters. Its Board, comprised of church members, governed the FPCS's business operations, real and personal property, and "all other temporal affairs."

---

[1] 79 Wn.2d 367, 485 P.2d 615 (1971).

FPCS purchased its first parcel of real estate in 1905 and added additional parcels over the years until it had accumulated all of its current real estate located on 7th Avenue in downtown Seattle. It purchased the property with funds from its members. Title to its property has remained in its name as a nonprofit corporation. Neither Presbytery nor PCUSA has financially contributed to its property.

In November 2015, FPCS told Presbytery that its Session was going to vote on whether to disaffiliate from PCUSA and seek affiliation with another Presbyterian denomination. And its Board was going to vote on whether to amend the articles to remove all references to PCUSA. On November 15, the Session approved FPCS's disaffiliation from PCUSA, and the Board approved an amendment to the articles removing any reference to PCUSA.

On November 17, Presbytery formed the AC to investigate FPCS's disaffiliation. On February 16, 2016, the AC issued a report assuming "original jurisdiction" over FPCS based on its finding that "the governing board of FPCS (the FPCS session) is unable or unwilling to manage wisely its affairs." This report found that the 2015 amendments to FPCS's articles and bylaws were improper and ineffective, leaving the prior articles and bylaws in force. And it rejected FPCS's disaffiliation, stating that FPCS remained a part of PCUSA because PCUSA had not dismissed FPCS, which the church constitution

authorized only PCUSA to do. It also ousted certain FPCS members from FPCS's Session and Board. And it elected church officers, appointed an individual to handle administrative matters, and called for an audit of FPCS's finances. It stated, "All property held by or for FPCS—including real property, personal property, and intangible property—is subject to the direction and control of the [AC] exercising original jurisdiction as the session of the church."

A day after the AC issued its report, respondents filed a lawsuit against appellants (Presbytery I). Among other things, respondents sought a declaratory judgment stating that the AC's report was "conclusive and binding" and that any "interest FPCS has in church property is held in trust for the benefit of [PCUSA]." On March 10, 2016, respondents asked the trial court to grant partial summary judgment on its declaratory judgment claim. Appellants opposed the request and asked for a CR 56(f) continuance. They claimed respondents had not yet responded to their discovery request about whether PCUSA was hierarchical for purposes of civil disputes. Appellants also asked for a preliminary injunction to stop Presbytery from asserting control over FPCS's corporate affairs and property.

In May 2016, the trial court ruled in respondents' favor on all three requests. It concluded that (1) PCUSA is a hierarchical church and the AC's determinations are conclusive and binding on the Session, trustees, and

-5-

congregation of FPCS, (2) the AC's February 16, 2016, findings and rulings are conclusive and binding, (3) the 2015 purported amendments to the bylaws and articles of incorporation "are void and without effect," (4) FPCS holds all church property in trust for the benefit of the PCUSA, and (5) the AC is the current governing body of FPCS. Appellants asked the court to reconsider its orders granting partial summary judgment, denying a CR 56(f) continuance, and denying a preliminary injunction. In a June 20, 2016, order, the trial court denied appellants' request to reconsider its denial of the CR 56(f) motion, asked for briefing "on whether it is factually at issue that [PCUSA] is a hierarchical church," and reserved ruling on reconsideration of its denial of the request for a preliminary injunction.

On June 30, after considering appellants' additional briefing, the trial court denied the remainder of their reconsideration requests. The trial court struck their third party complaint and dismissed their Consumer Protection Act[2] claim. Appellants voluntarily dismissed claims for defamation, intentional interference with contractual relations, slander of title, trademark infringement, and ultra vires actions. The parties settled their remaining claims and agreed to a stipulated final order and judgment entered on August 16, 2017. Following these orders, respondents assumed control of FPCS and its property.

---

[2] Ch. 19.86 RCW.

In September 2016, Presbytery and FPCS sued the Schulzes and asked the trial court to declare the severance agreements between the Schulzes and FPCS unenforceable (Presbytery II). The Schulzes became the copastors of FPCS in January 2006. On November 10, 2015, the Schulzes and the Board executed the Schulzes' severance agreements. These agreements had the stated purpose of encouraging the Schulzes to remain as pastors of FPCS, "including in the event of any conflict between FPCS, its Session, and its Congregation, on the one hand, and Presbyterian Church (U.S.A.), or any Presbytery, Synod, Administrative Commission, or affiliate (other than FPCS) of Presbyterian Church (U.S.A.) (collectively "PCUSA"), on the other hand." They stated that if FPCS, while under the control of PCUSA and Seattle Presbytery, terminated the Schulzes' employment other than for "Good Cause," as defined by the agreements, FPCS would (1) pay the Schulzes their "Regular Compensation" for two years or until they obtained comparable employment and (2) forebear for three years from the remedies FPCS had available under its 2006 home equity sharing agreement with the Schulzes. The severance agreements limited "good cause" to the Schulzes' commission of certain identified misconduct like dishonesty, the use of illegal drugs, and moral turpitude that harmed FPCS's reputation.

On August 25, 2016, the AC issued a supplemental report stating, (1) the FPCS Board that entered into the severance agreements was not "validly constituted," (2) the severance agreements constituted a "change in the terms of call" that required the congregation's and the presbytery's approval, neither of which the Schulzes sought, so the severance agreements were invalid, (3) the Schulzes "ended their pastoral relationship with FPCS when they voluntarily renounced the jurisdiction of the [PCUSA]" effective December 16, 2015, at which time they ceased to serve FPCS in good faith and good standing, (4) the severance agreements' good cause standard "cannot replace the requirements placed upon teaching elders by the Book of Order," (5) even if the good cause standard applied, FPCS had good cause to terminate the Schulzes' employment due to alleged dishonesty and misconduct, and (6) the Schulzes did not sign a release of possible claims against FPCS, so payment under the agreements was not due.

In November 2016, after PCUSA and FPCS sued the Schulzes, FPCS stopped paying the Schulzes their regular pastoral compensation. On November 18, the Schulzes filed counterclaims against FPCS for breach of contract and willful withholding of wages. PCUSA and FPCS asked the trial court to grant them summary judgment, claiming that the AC "determined that [FPCS] has no obligations under the Severance Agreements. A civil court must defer to the

[AC's] judgment." The trial court granted this request. It decided that the AC's determinations were "conclusive and binding." It concluded the severance agreements were "invalid, inapplicable, and unenforceable" because (1) they constituted "a change in the terms of call" for the Schulzes, which required FPCS's and Presbytery's congregations' approval, (2) the Schulzes terminated their pastoral relationships when they renounced the jurisdiction of PCUSA, (3) the Schulzes ceased to serve in good faith and standing as pastors of FPCS because they renounced jurisdiction, and (4) the severance agreements' attempt to replace the standards of pastoral conduct in the "Book of Order" with a "good cause" standard was improper.

The trial court entered final judgment in Presbytery II on April 3, 2017. The Schulzes appealed to the Washington Supreme Court on April 21, 2017. The trial court entered final judgment in Presbytery I in August 2017. Appellants again appealed to our Supreme Court. The Supreme Court consolidated Presbytery I and Presbytery II. It then transferred the consolidated case to this court.

## STANDARD OF REVIEW

This court reviews an order granting summary judgment de novo and performs the same inquiry as the trial court.[3] It considers all facts and

---

[3] Mohr v. Grant, 153 Wn.2d 812, 821, 108 P.3d 768 (2005).

reasonable inferences in the light most favorable to the nonmoving party.[4] And it affirms summary judgment only when the evidence presented demonstrates no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[5]

ANALYSIS

Stare Decisis Requires That This Court Follow Presbytery of Seattle, Inc. v. Rohrbaugh

Both appellants and the Schulzes maintain that stare decisis does not bar this court from reexamining the compulsory deference approach our Supreme Court adopted in Rohrbaugh because the United States Supreme Court's decision in Jones v. Wolf[6] changed Rohrbaugh's legal underpinnings. We disagree.

In Rohrbaugh, the pastor and a third of the members of Laurelhurst United Presbyterian Church of Seattle voted to withdraw as a body from the United Presbyterian Church.[7] These members asked the Presbytery of Seattle to strike Laurelhurst from its rolls and authorize them to use the church property for their own purposes.[8] Presbytery refused and advised that the church constitution did

---

[4] Wilson v. Steinbach, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).
[5] Steinbach, 98 Wn.2d at 437.
[6] 443 U.S. 595, 99 S. Ct. 3020, 61 L. Ed. 2d 775 (1979).
[7] Rohrbaugh, 79 Wn.2d at 367-68.
[8] Rohrbaugh, 79 Wn.2d at 368.

not authorize members of an affiliated church to withdraw as a body.[9] The members maintained the fact that they were the record titleholders of the property entitled them to use and control it.[10] In examining this issue, the Washington Supreme Court adopted the rule that the United States Supreme Court articulated in Watson v. Jones:[11]

> [T]he decision of the highest tribunal of a hierarchical church to which an appeal has been taken should be given effect by the courts in a controversy over the right to use church property. [And] in the absence of fraud, where a right of property in an action before a civil court depends upon a question of doctrine, ecclesiastical law, rule or custom, or church government, and the question has been decided by the highest tribunal within the organization to which it has been carried, the civil court will accept that decision as conclusive.[12]

Our Supreme Court concluded that the record titleholder of the property was The First United Presbyterian Church of Seattle, the former name of Laurelhurst, and "a corporation which by its bylaws is subject to the discipline of the United Presbyterian Church, and is governed by a Session which must act in accord with that discipline."[13] The court further stated that according to the decision of "the highest tribunal," the members "had no right to withdraw from the church as a body and take with them the name of the church and its property," and they "forfeited their right to govern the affairs of the church when they did

---

[9] Rohrbaugh, 79 Wn.2d at 368.
[10] Rohrbaugh, 79 Wn.2d at 369.
[11] 80 U.S. (13 Wall.) 679, 20 L. Ed. 666 (1871).
[12] Rohrbaugh, 79 Wn.2d at 373.
[13] Rohrbaugh, 79 Wn.2d at 373.

so."[14]   The court held that because the United Presbyterian Church is hierarchical, its highest tribunal's decision about ownership and control was conclusive.[15]

Eight years after <u>Rohrbaugh</u>, the United States Supreme Court decided <u>Jones</u>.   This case involved a dispute over the ownership of church property after the rupture of a local church affiliated with the Presbyterian Church.[16]   The Court characterized the Presbyterian Church as a hierarchical organization.[17]   It framed the issue as "whether civil courts, consistent with the First and Fourteenth Amendments to the Constitution, may resolve the dispute on the basis of 'neutral principles of law,' or whether they must defer to the resolution of an authoritative tribunal of the hierarchical church."[18]   The Court defined "neutral principles of law" as relying on "well-established concepts of trust and property law familiar to lawyers and judges" and involving, for example, "the language of the deeds, the terms of the local church charters, and state statutes governing the holding of church property, and the provisions in the constitution of the general church concerning the ownership and control of church property."[19]

---

[14] <u>Rohrbaugh</u>, 79 Wn.2d at 371-72, 373.
[15] <u>Rohrbaugh</u>, 79 Wn.2d at 367-73.
[16] <u>Jones</u>, 443 U.S. at 597.
[17] <u>Jones</u>, 443 U.S. at 597-98.
[18] <u>Jones</u>, 443 U.S. at 597.
[19] <u>Jones</u>, 443 U.S. at 603.

> The primary advantages of the neutral-principles approach are that it is completely secular in operation, and yet flexible enough to accommodate all forms of religious organization and polity. The method relies exclusively on objective, well-established concepts of trust and property law familiar to lawyers and judges. It thereby promises to free civil courts completely from entanglement in questions of religious doctrine, polity, and practice.[20]

The Court noted that the First Amendment does not dictate that a State must follow a particular method of resolving church property disputes. Indeed, "'a State may adopt any one of various approaches for settling church property disputes so long as it involves no consideration of doctrinal matters, whether the ritual and liturgy of worship or the tenets of faith.'"[21] The Court held that "a State is constitutionally entitled to adopt neutral principles of law as a means of adjudicating a church property dispute."[22] But if "the interpretation of the instruments of ownership would require the civil court to resolve a religious controversy, then the court must defer to the resolution of the doctrinal issue by the authoritative ecclesiastical body."[23]

Appellants contend that this court should reconsider Rohrbaugh because Jones changed its legal underpinnings. First, Jones states only that unless ecclesiastical doctrine is involved, a State may constitutionally adopt neutral

---

[20] Jones, 443 U.S. at 603.
[21] Jones, 443 U.S. at 602 (Brennan, J., concurring) (quoting Maryland & Va. Churches v. Sharpsburgh, 396 U.S. 367, 368, 90 S. Ct. 499, 24 L. Ed. 2d 582 (1970)).
[22] Jones, 443 U.S. at 604.
[23] Jones, 443 U.S. at 604.

principles of law as a means of adjudicating a church property dispute; <u>Jones</u> does not require that states adopt this approach. Second, stare decisis requires this court to follow <u>Rohrbaugh</u>. "Stare decisis," a Latin phrase meaning "to stand by things decided," has two manifestations: horizontal stare decisis and vertical stare decisis.[24] Under horizontal stare decisis, a court is not required to follow its own prior decisions.[25] The Washington Supreme Court has stated that generally, under stare decisis, it will not overturn its precedent unless there has been "'a clear showing that an established rule is incorrect and harmful'"[26] or "when the legal underpinnings of [its] precedent have changed or disappeared altogether."[27] But "vertical stare decisis" requires that courts "follow decisions handed down by higher courts in the same jurisdiction. For example, trial and appellate courts in Washington must follow decisions handed down by our Supreme Court and the United States Supreme Court. Adherence is mandatory, regardless of the merits of the higher court's decision."[28]

---

[24] <u>In re Pers. Restraint of Arnold</u>, 198 Wn. App. 842, 846, 396 P.3d 375 (2017), <u>rev'd on other grounds</u>, 190 Wn.2d 136, 410 P.3d 1133 (2018) (quoting BLACK'S LAW DICTIONARY 1626 (10th ed. 2014)).

[25] <u>Arnold</u>, 198 Wn. App. at 846.

[26] <u>W.G. Clark Constr. Co. v. Pac. Nw. Reg'l Council of Carpenters</u>, 180 Wn.2d 54, 65, 322 P.3d 1207 (2014) (quoting <u>In re Rights to Waters of Stranger Creek</u>, 77 Wn.2d 649, 653, 466 P.2d 508 (1970)).

[27] <u>W.G. Clark Constr. Co.</u>, 180 Wn.2d at 65.

[28] <u>Arnold</u>, 198 Wn. App. at 846.

Because our Supreme Court decided Rohrbaugh, it is binding on this court and the doctrine of vertical stare decisis does not allow this court to reconsider it.

Church Property Dispute in Presbytery I

Appellants alternatively contend that even if this court applies Rohrbaugh's compulsory deference approach, the trial court erred in granting respondents summary judgment because (1) a genuine issue of material fact exists about whether the Presbyterian Church is hierarchical, (2) FPCS disaffiliated from PCUSA before the AC issued its report, and (3) the trial court erred in denying appellants' motion for a continuance. We disagree.

A. The Presbyterian Church Is Hierarchical

First, FPCS claims that the trial court erred in deferring to the AC's report because a genuine issue of material fact exists about whether the Presbyterian Church is hierarchical. We disagree.

The parties agree that under Rohrbaugh's deference approach, courts defer to an ecclesiastical tribunal only if the denomination is hierarchical.[29] Appellants rely on Southside Tabernacle v. Pentecostal Church of God, Pacific Northwest District, Inc.[30] to show that whether a church is hierarchical involves question of fact to be decided by the trial court. But Southside Tabernacle also states, "Although the hierarchical or congregational structure is a question of fact,

---

[29] Rohrbaugh, 79 Wn.2d at 371-72.
[30] 32 Wn. App. 814, 821-22, 650 P.2d 231 (1982).

summary judgment is available . . . if the trial court can say as a matter of law that [a church] is hierarchical."[31] A church is hierarchical when it is "a subordinate member of some general church organization in which there are superior ecclesiastical tribunals."[32] A church is congregational when it is "governed independent of any other ecclesiastical body."[33]

The constitution of PCUSA governs the church; Part II of this constitution, called the Book of Order, provides the ecclesiastical law of PCUSA. Ordained Presbyterian minister and teaching elder Scott Lumsden and the Book of Order state that congregations within the Presbyterian Church are governed by a hierarchy of councils that include, in ascending order, (1) Sessions comprised of pastors and elders of the local congregation, (2) presbyteries comprised of all pastors and at least one elder from each of the congregations within a district, (3) synods comprised of representative pastors and elders from the presbyteries within a region, and (4) the general assembly comprised of delegations of pastors and elders from the presbyteries. The Book of Order also states, "The particular congregations of the Presbyterian Church (U.S.A.) wherever they are, taken collectively, constitute one church, called the church. . . . The relationship

---

[31] Southside Tabernacle, 32 Wn. App. at 822.
[32] Org. for Preserving the Constitution of Zion Lutheran Church v. Mason, 49 Wn. App. 441, 447, 743 P.2d 848 (1987).
[33] Mason, 49 Wn. App. at 447.

to the Presbyterian Church (U.S.A.) of a congregation can be severed only by constitutional action on the part of the presbytery."

FPCS relies on the declaration of Reverend Parker Williamson, an ordained Presbyterian minister. He stated that the Book of Order acknowledges that PCUSA is hierarchical for ecclesiastical matters only, not civil matters. To support his assertion, Williamson refers to provisions from the Book of Order stating that religious constitutions should not be aided by civil power and governing bodies of the church do not have civil jurisdiction. He also notes that PCUSA's General Assembly Permanent Judicial Commission has stated that although one provision in the Book of Order refers to a higher governing body's "right of review and control over a lower one," these concepts must be understood within the context of the "shared responsibility and power at the heart of Presbyterian order," not in hierarchical terms. But whether the Book of Order, internal tribunals, seminary treatises, or Presbyterian history characterize the Presbyterian Church as being hierarchical only for ecclesiastical matters is not relevant when our Supreme Court has adopted the Rohrbaugh analysis to ensure religious entities receive their First Amendment protections.

To counter Williamson, PCUSA provided the declaration of Laurie Griffith, an elected "Assistant Stated Clerk of the General Assembly of the [PCUSA] [who is] empowered, along with other Associate and Assistant Stated Clerks, to give

-17-

guidance on Authoritative Interpretations of the Constitution of the [PCUSA]." She disagreed with Williamson's conclusion that the church is not hierarchical for civil matters. She explained in her declaration that the Book of Order establishes the polity and form of the church. She detailed the levels of the hierarchy of councils governing the church discussed above, explaining that it is because of the structure of the church that "secular courts have historically identified the polity of the [PCUSA] as being hierarchical in nature." Griffith stated further, "Chapter 4 of the Book of Order unequivocally establishes that civil matters impacting church property proceed through the polity as set forth within the other parts of the Book of Order." It states that "all property held by a congregation, a presbytery, a synod, the General Assembly, or the [PCUSA] "is held in trust . . . for the use and benefit of the [PCUSA]."

Additionally, the Washington Supreme Court in Rohrbaugh described the Presbyterian Church as having a hierarchical structure, and the Unites States Supreme Court in Jones stated that the Presbyterian Church "has a generally hierarchical or connectional form of government, as contrasted with a congregational form."[34] This, in addition to Griffith's interpretation of the Book of Order and the text itself, makes clear that the Presbyterian Church contains local churches that are subordinate to PCUSA. No genuine issue of material fact

---

[34] Rohrbaugh, 79 Wn.2d at 373; Jones, 443 U.S. at 597-98.

exists about whether the church is hierarchical. The trial court did not err in finding that it was hierarchical.

*B. FPCS's Purported Disaffiliation from PCUSA before the AC Issued Its Report Does Not Preclude Application of the Deference Approach*

Next, appellants claim that because they lawfully disaffiliated from PCUSA before the AC issued its report, Rohrbaugh does not require that this court defer to the AC's determination. Appellants contend that here, unlike in Rohrbaugh, the congregation of the entire local church voted to disaffiliate from the national church and amend its articles to remove PCUSA's authority. They assert that when FPCS voted to disaffiliate on November 15, 2015, PCUSA's ecclesiastical authority over it ended.

Rohrbaugh, however, requires that a court give effect to the decision of the highest tribunal of a hierarchical church in a controversy over the right to use church property. This rule applies here. Appellants do not cite any authority to support that the factual distinction they identify has legal significance. Because FPCS purportedly disaffiliated from PCUSA before the AC issued its report does not mean that the trial court erred in deferring to the AC's decision.

*C. The Court Did Not Err in Denying Appellants' CR 56(f) Motion for a Continuance*

Last, appellants assert that the trial court erred in denying their CR 56(f) request to continue the summary judgment hearing because respondents had

not yet produced all their requested discovery about whether the Presbyterian Church is hierarchical. We disagree.

CR 56(f) gives courts discretion to continue a motion for summary judgment to allow further discovery if the nonmoving party, for good reason, cannot present facts essential to oppose the motion.[35] A trial court may deny a CR 56(f) motion when, "(1) the requesting party fails to offer a good reason for the delay, (2) the requesting party does not state what evidence is desired, or (3) the desired evidence will not raise a genuine issue of material fact."[36] This court reviews a denial of a motion for a CR 56(f) continuance for abuse of discretion.[37] A court abuses its discretion when it bases its decision on untenable grounds or reasons.[38]

Appellants asked respondents to produce all documents related to whether the Presbyterian Church is a hierarchical denomination, which appellants contend is a material issue that they were unable to develop. Appellants' trial counsel asked for a three-month continuance to look "for evidence relating to the intent and I think the legally cognizable evidence of a trust. The legally cognizable evidence of the importation of Book of Order provisions into the governance documents of the Church and of its corporation."

---

[35] Kozol v. Dep't of Corr., 192 Wn. App. 1, 6, 366 P.3d 933 (2015).
[36] Kozol, 192 Wn. App. at 6.
[37] Kozol, 192 Wn. App. at 6.
[38] Kozol, 192 Wn. App. at 6.

When the trial court stated that it would need more information about what appellants were looking for because it had not heard a reason to give them a continuance, appellants' counsel stated they wanted to discover

> evidence regarding whether PCUSA is hierarchical for civil purposes. We have requests of PCUSA that are outstanding and unresponded to. . . . I would imagine that there are e-mails, that there are internal documents within the offices in Kentucky where the denomination headquarters are that relate to these issues.

Respondents' counsel explained that appellants had the Book of Order, Griffith's declaration and its exhibits, and all the minutes for Seattle Presbytery from 1979 among other documents. Respondents' counsel stated further,

> We've also given them citations to numerous court decisions on this topic. Last, but not least, we have produced [appellants'] own communications with the congregation last November, in which they say that the congregation should vote to disaffiliate because the PCUSA is hierarchical and has limited their freedom of action.

Counsel asserted that additional discovery would be only cumulative.

The trial court denied appellants' request for a continuance:

> The record shows that [appellants] have had sufficient time and notice to prepare their opposition to [respondents'] motion for partial summary judgment. [Appellants] have had ample opportunity to assemble declarations from experts, and they have done so. Upon inquiry from the court as to what specific evidence the [appellants] expected to discover, [appellants'] counsel made only vague references to internal correspondence he suspected existed. Even so, the anticipated evidence would not add anything to the [appellants'] already thorough response to the [respondents'] motion for summary judgment. Evidence of the sort alluded to by [appellants'] counsel would be cumulative at best.

[Appellants] fail to show that additional discovery would support further their assertion that there exists a genuine issue of material fact as to whether the Presbyterian Church (U.S.A.) is hierarchical.

The record shows that appellants had already received extensive documentation related to whether the church is hierarchical, and appellants' counsel asked for a continuance to discover documents that he merely expected existed. As discussed above, the trial court properly decided that the Presbyterian Church is hierarchical as a matter of law. The trial court acted within its discretion to deny appellants' continuance request.

The trial court did not err in following Rohrbaugh and deferring to the AC's determination that any interest FPCS had in church property was held in trust for the benefit of PCUSA.

### Employment Contract Dispute in Presbytery II

The Schulzes claim that even if this court declines to reconsider Rohrbaugh, it should still decide that the trial court erred in applying compulsory deference rather than neutral principles to the AC's determinations about their severance agreements because courts in other jurisdictions and "[m]ost Washington court[ ] of appeals decisions" recognize that compulsory deference does not apply to a civil contract dispute involving religious institutions. We disagree.

In <u>Organization for Preserving the Constitution of Zion Lutheran Church v.</u>

<u>Mason</u>,[39] the organization, comprised of members of the Zion Lutheran

congregation, sought to enjoin the installation of Joseph Mason as pastor based

on a voting provision in Zion Lutheran's constitution. The church asserted that

because no property interest was involved, the civil courts could not interfere.[40]

The trial court dismissed the organization's complaint, finding that it lacked

authority to interpret the provision at issue in Zion Lutheran's constitution.[41] This

court reversed and remanded for trial on two grounds: (1) there remained a

question of fact about whether the church was hierarchical or congregational and

(2) the church did not have a binding dispute resolution process.[42] We rejected

the argument that the dispute involved ecclesiastical questions that the trial court

could not decide.[43] We explained that based on <u>Rohrbaugh</u>,

> when a property dispute is involved, [the issue in this jurisdiction] is
> whether the church in question is hierarchically or congregationally
> organized. We see no logical reason why a different approach
> should be used to determine when the civil courts have jurisdiction
> over religious disputes not involving property.
>
> Therefore, the jurisdictional threshold question remains
> whether Zion Lutheran Church is an independent congregation or a
> member of a hierarchically organized church.[44]

---

[39] 49 Wn. App. 441, 442-44, 743 P.2d 848 (1987).
[40] <u>Mason</u>, 49 Wn. App. at 445-46.
[41] <u>Mason</u>, 49 Wn. App. at 442.
[42] <u>Mason</u>, 49 Wn. App. at 447-50.
[43] <u>Mason</u>, 49 Wn. App. at 449.
[44] <u>Mason</u>, 49 Wn. App. at 447.

And we stated that because the church did not have a binding dispute resolution process, "If the civil courts denied jurisdiction, the Organization would be without a remedy."[45] Mason thus extended Rohrbaugh's compulsory deference approach to civil disputes within a hierarchically organized church that has a binding dispute resolution process.

Consistent with this holding is our Supreme Court's plurality opinion in Erdman v. Chapel Hill Presbyterian Church.[46] There, an employee of a local denomination of the Presbyterian Church brought a number of claims against the church and its ministers, including negligent retention and negligent supervision.[47] She submitted her claims to the church's decision-making ecclesiastical tribunal, which concluded her "allegations could not be reasonably proved."[48] In affirming the trial court's dismissal of Erdman's claims, the plurality opinion held that because Erdman submitted her claims to the church's highest decision-making tribunal and the church is "undisputedly a hierarchically structured church," a civil court must defer to the church's ecclesiastical decision.[49] The court noted that in Rohrbaugh, it "recognized the principle that deference is to be afforded such decisions of an ecclesiastical tribunal of a

---

[45] Mason, 49 Wn. App. at 449.
[46] 175 Wn.2d 659, 286 P.3d 357 (2012).
[47] Erdman, 175 Wn.2d at 660.
[48] Erdman, 175 Wn.2d at 664.
[49] Erdman, 175 Wn.2d at 681-82, 684.

hierarchical church."[50] And it relied on the rule from the United States Supreme Court's decision in Watson, stating,

> [T]he rule that should "govern the civil courts" is that "whenever the questions of discipline, or of faith, or ecclesiastical rule, custom, or law have been decided by the highest of these church judicatories to which the matter has been carried, the legal tribunals must accept such decisions as final, and as binding on them, in their application to the case before them."[51]

Last, in Elvig v. Ackles,[52] this court reiterated the rule articulated in Mason. The Schulzes mistakenly claim that Elvig shows a court should apply neutral principles to a civil contract dispute. There, Monica Elvig, an associate minister at Calvin Presbyterian Church, told the church that Reverend Will Ackles had sexually harassed her.[53] Church authorities did not discipline Ackles because the church's investigating committee and judicial commission decided that insufficient evidence existed to file a charge.[54] They also precluded Elvig from seeking other work, claiming that the Book of Order prohibited a minister from transferring while charges were pending.[55] We affirmed the rule we articulated in Mason, stating, "[I]f the church accused of wrongdoing is a member of a hierarchically-organized church that has ecclesiastical judicial tribunals, civil

---

[50] Erdman, 175 Wn.2d at 682.
[51] Erdman, 175 Wn.2d at 679-80 (emphasis added) (quoting Watson, 80 U.S. at 727).
[52] 123 Wn. App. 491, 98 P.3d 524 (2004).
[53] Elvig, 123 Wn. App. at 493.
[54] Elvig, 123 Wn. App. at 498-99.
[55] Elvig, 123 Wn. App. at 498-99.

courts must defer to the highest church tribunal's resolution of the matter, despite the fact that the dispute could be resolved by a civil court."[56] In affirming the trial court's dismissal of Elvig's claims against the church, the presbytery, and Ackles, this court reasoned,

> Elvig's negligent supervision and aiding and abetting claims would require a secular court to examine decisions made by ecclesiastical judicial bodies, and her retaliation claims would require a court to question and interpret the transfer rule in the church's Book of Order. We can do neither without effectively undermining the church's inherent autonomy.
>
> . . . .
>
> Our ruling is a narrow one based on the court's inability to question or interpret the Presbyterian Church's self-governance.[57]

The Schulzes ask this court to distinguish Erdman and Elvig from this case because both Erdman and Elvig filed complaints with their respective churches. The Schulzes claim that by contrast, because they did not submit their severance claims to any ecclesiastical body for resolution but, rather, Presbytery unilaterally convened the AC to decide the validity of their severance agreements, a civil court need not defer to the AC's decision. We do not find this factual distinction persuasive. It has no bearing on the rule that a civil court must defer to the decision of the highest tribunal of a church that is hierarchically structured.

---

[56] Elvig, 123 Wn. App. at 496.
[57] Elvig, 123 Wn. App. at 499.

Consistent with <u>Mason</u>, <u>Erdman</u>, and <u>Elvig</u>, we conclude that because the Presbyterian Church is hierarchical and has an internal dispute resolution process, the trial court properly deferred to the AC's determination that the Schulzes' severance agreements were invalid.

## CONCLUSION

We affirm. The trial court properly deferred to the AC's determinations resolving the property and severance agreement disputes.

_Leach, J_

WE CONCUR:

_Mann, ACJ_

_Dwyer, J._